[602 NYS2d 50]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v SEAN ROSELLE, Respondent.

Second Department, August 16, 1993

**APPEARANCES OF COUNSEL**

*Carl A. Vergari, District Attorney* of Westchester County, White Plains *(Richard E. Weill* of counsel), for appellant.

*Stephen J. Pittari,* White Plains *(Robin J. Bauer* of counsel), for respondent.

**OPINION OF THE COURT**

RITTER, J.

The issue on appeal is whether the doctrine of issue preclusion bars the People from prosecuting the defendant for the alleged assault of his three-year-old daughter because the Family Court, in an earlier child protective proceeding, found child neglect but not child abuse. We conclude that the prosecution should not be precluded by reason of the Family Court's finding. Accordingly, we reverse the order of the County Court dismissing the first three counts of the indictment.

I

The facts pertinent to both the instant criminal action, and the related Family Court proceeding, concern an incident which occurred on April 29, 1990. On that date, the defendant allegedly filled a bathtub with scalding hot water and placed his then three-year-old daughter inside, causing serious burns on the child's buttocks, perineum and right foot. Following the child's arrival and treatment at a nearby hospital, the matter was promptly referred to the Westchester County Department of Social Services (hereinafter the DSS). The defendant was interviewed by a caseworker from the Child Protective Services on May 1, 1990, and within days, the child was placed in the temporary custody of the DSS pursuant to Family Court Act § 1021.

Soon thereafter, the DSS filed an abuse and neglect petition with respect to the subject child, alleging that she had been burned on the buttocks and the top of her feet by scalding hot water while she had been in the defendant's care. Further, it was alleged that the defendant's explanation of how the injuries were sustained was inconsistent with the injuries suffered by the child. The petition also charged the child's mother with neglect for having failed to take appropriate measures to insure her protection. As required by Family Court Act § 254 (b), the District Attorney was made a party in the Family Court abuse proceeding.

On July 6, 1990, all parties, including a nonlawyer domestic violence aide representing the District Attorney, appeared in the Family Court for a fact-finding hearing. The child's mother withdrew her denial of the petition and consented to a finding of neglect. After extended conferences, both on and off the record, it was further agreed that the defendant would likewise withdraw his denial and make a statement describing what he claimed occurred, in lieu of a full trial, leaving it for the court to determine whether his description of his conduct constituted abuse or neglect. The defendant was then sworn and allowed to give his account of how the child sustained her injuries.

The defendant testified that he was preparing to give his three-year-old daughter and his two-year-old son a bath at approximately 12:00 noon on April 29, 1990. He said that he ran the water into the tub and tested it to see if it was warm enough. He claimed that his daughter was uncooperative because she did not want to take a bath. The child was screaming and fighting as he was putting her in the tub, so he ordered her to sit down. The defendant saw steam rising from the water and touched it, but it did not feel hot to him. He then noticed that the child's "body was all messed up". He put cold water and cocoa butter on her burns and then took her to the hospital.

During cross-examination conducted by an Assistant County Attorney, the defendant was unable to explain why the child's left foot had not been burned in the incident. He also admitted that he had previously lied about the incident and told the authorities that the child's mother had caused the injuries. Based solely on the defendant's testimony, the Family Court (Lefkowitz, J.), sustained the allegations of neglect but dismissed the charge of abuse, and made the following pertinent findings:

"[T]he Court finds that the admission was voluntary and * * * that the [defendant] * * * was sincere in the admission he made to the Court, and that the child did suffer extensive injuries in this case, and because of the manner in which the [defendant] told exactly what happened, to the Court, the Court is most sympathetic but admonishes the [defendant], at this time, that he has to be a lot more careful * * *

"The petition is sustained that on or about April 29 [the subject child] was burned on the buttocks and top of her feet by scalding hot water while in the care and custody of the [defendant], Sean Roselle. The [defendant] explained to the Court how the injuries occurred and his explanation was very credible as to how they occurred. At this time the Court, because of his explanation is going to make a finding of neglect rather than abuse, but again, the injuries are serious. So, I have to tell you again, when you have a child in your care and custody you got to be awful careful * * * [T]he petition is sustained as to neglect".

On or about August 15, 1990, the Family Court issued a written order of fact finding and interim disposition sustaining the petition as to neglect, and directing that the subject child remain in the custody of the DSS pending a dispositional hearing. The court also directed that the mother and the defendant undergo psychiatric evaluations.[1]

On or about September 26, 1990, the indictment in the instant criminal action was filed, charging the defendant with the crimes of assault in the first degree, criminal possession of a weapon in the fourth degree, and endangering the welfare of a child, all arising out of the April 29, 1990 incident. He was also charged with making a punishable false statement and perjury in the third degree as a result of allegedly false statements he made to authorities on May 7, 1990 and May 11, 1990, respectively.

The defendant filed an omnibus motion seeking, *inter alia,* dismissal of the first three counts of the indictment. The defense counsel argued that the People are collaterally estopped from litigating the issue of whether the defendant intentionally caused injury to his daughter during the April 29, 1990 incident. According to defense counsel, the identical

1. On November 16, 1990, the Family Court issued a further dispositional order directing that the subject child remain in the custody of the DSS for an additional six months. The defendant was further directed to participate in a parenting skills program and to obtain job counseling.

issue had necessarily been determined in the defendant's favor by the Family Court, and the District Attorney, a party to the prior proceedings, had a full and fair opportunity to litigate the issue.

The County Court granted that branch of the motion, holding that the People were precluded from prosecuting the defendant on the criminal charges since the Family Court had "specifically credited the defendant's testimony and found his daughter's injuries were caused by accident and not by acts of intentional abuse" *(People v Roselle,* 152 Misc 2d 191, 194). The court concluded that the District Attorney had had a full and fair opportunity to litigate the issue of abuse as a "necessary party" pursuant to Family Court Act § 254 (b), but instead "sat on [his] hands in the Family Court [and could not now argue that] the issues were not fully litigated" *(People v Roselle,* 152 Misc 2d 191, 193, *supra).*[2]

## II

In our view, the County Court's decision misconstrued the role of the District Attorney in an abuse proceeding pursuant to Family Court Act article 10 by equating his designation as a "necessary party" with being accorded a full and fair opportunity to litigate the issue of abuse. In fact, the only lawyer presenting the case for abuse was the County Attorney. The District Attorney could not have elected to be an additional presenter of the same case because no litigant may have multiple lawyers presenting essentially duplicate cases[3]

---

2. The defendant's motion to dismiss was made on or about November 16, 1990. After submission of a series of papers, the court issued its order granting the defendant's motion with respect to the first three counts of the indictment on October 4, 1991. On October 11, 1991, the defendant pleaded guilty to the two remaining counts of the indictment charging him with perjury in the third degree and making a punishable false statement. On November 22, 1991, he was sentenced to concurrent three-year terms of probation. The People contend that these two counts do not arise out of the same criminal transaction as the first three counts, citing CPL 40.10 (2), so that the plea has no impact upon the dismissed counts. We are not called upon to decide this question on this appeal. On November 25, 1991, the court denied the People's motion for leave to reargue the October 4, 1991 determination. Since the denial of reargument is not appealable, the People are only appealing from the original order.

3. While it is not permissible for two or more lawyers to make separate presentations of one party's case, this rule does not preclude the representation of a single party by two or more lawyers who agree on a division of trial responsibilities so that, for example, one lawyer opens and closes while another examines the witnesses.

*(compare, Matter of Williams,* 120 Misc 2d 269). In short, the District Attorney was permitted to audit the proceedings and to assist in any appropriate way, but the responsibility in this case for initiating an abuse proceeding rested with the local child protective services agency, represented by the County Attorney, as did the decision with respect to what disposition would be recommended. The history of Family Court Act article 10 lends weight to our conclusion.

When the Family Court Act was adopted in 1962, alleged child abuse was litigated under Family Court Act former article 3, which specifically addressed child neglect proceedings. The District Attorney did not play a role or participate in civil child abuse matters until 1969, when the Legislature added article 10 to the Family Court Act. The new article created a separate child abuse part designed to give such matters special attention, and expedite the handling of cases involving serious physical abuse *(see,* L 1969, ch 264, § 1013). For the first time, police attorneys assigned by the Police Commissioner in the City of New York, and Assistant District Attorneys assigned by the District Attorney in counties outside the City of New York, were required to assist in the presentation of all cases originating in the separate child abuse parts. Both police attorneys and District Attorneys were authorized to originate proceedings (Family Ct Act § 1014), and both were required to represent the abused child during all stages of the proceedings (Family Ct Act § 1016).

The enactment of Laws of 1969 (ch 264) was a legislative response to strong public outcry concerning the Family Court's alleged mishandling of the Roxanne Felumero case *(see generally,* Besharov, Introductory Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act art 10, at 214-216). The facts are summarized in the report of the Judiciary Relations Committee of the First Judicial Department, which was published in full in the New York Law Journal *(see, Judiciary Relations Panel's Report on Felumero Case,* NYLJ, June 30, 1969, at 1, col 4; July 1, 1969, at 1, col 4; July 2, 1969, at 1, col 4; July 3, 1969, at 1, col 4). The case involved an infant girl who had been placed in foster care in 1966. In December 1968 the child was taken from her foster home and returned to the custody of her natural mother, allegedly against the recommendation of a caseworker who had been providing social services to the family. In early January 1969 the foster parents filed a second neglect petition against the child's natural mother but the matter dragged on

for months. A hearing on the petition was postponed several times because the natural mother either failed to appear, or failed to produce the child on the scheduled court date. On March 24, 1969, the child was found dead in the East River, allegedly murdered by her stepfather. The newspapers reported that the Family Court Judge had grossly mishandled the case by rejecting the recommendation of the caseworker, and by ignoring physical evidence that the child had been abused by her stepfather.

The Judiciary Relations Committee (hereinafter the Committee) which had conducted an investigation concerning the Family Court's handling of the Felumero case, issued its comprehensive report identifying serious deficiencies within the Family Court. The report also cited inadequate coordination among the various social agencies responsible for providing protective services for abused children.

The Legislature moved with such dispatch that it enacted chapter 264 even before the Committee completed its investigation and issued its report. Nonetheless, several areas of concern identified in the Committee's report provide insight in understanding the evolution of the District Attorney's role in abuse proceedings.

One recommendation in the Committee's report was to provide for an attorney to represent the petitioner in all abuse and neglect proceedings, both to insure proper drafting of the petition, and to investigate and prepare the matter properly for presentation to the court. The Committee recognized that most petitions were prepared and presented by counsel acting on behalf of a child welfare agency, but on occasions, private parties, such as foster parents, were attempting to prosecute serious cases without assistance from an attorney. The petition filed by the foster parents in the Felumero case did not name the child's stepfather as a respondent, a deficiency which the Committee viewed as contributing to the Family Court's apparent failure to apprehend the danger of allowing the child to be returned to her natural mother. The Committee also found serious deficiencies in the way the case was handled by the child's Law Guardian. The Committee's observation mirrored the concern expressed by the Governor in approving chapter 264 (Governor's mem approving L 1969, ch 264, 1969 NY Legis Ann, at 549-550) that an abused child be represented during all stages of the proceeding by either a police attorney or the District Attorney.

Soon after chapter 264 was enacted, various groups complained that the Legislature had reacted too quickly to the public outcry concerning the Felumero case. Some, including the Association of the Bar of the City of New York, objected to the new role imposed upon police attorneys in the City of New York and upon District Attorneys in counties outside the City of New York. Questions were raised concerning the wisdom of repudiating the role of the Law Guardian and having one attorney (the District Attorney or police attorney) represent both the petitioner and the abused child (see, Note, *Legislation —Child Protection Proceedings Under Article 10 of the New York Family Court Act,* 20 Buff L Rev 561, 562; Report of Comm on Family Ct and Family Law, *The Enactment Of The Abused Child Law And Committee Findings As To Defects In The Law,* 24 Record of Assn of Bar of City of NY 347, 348 [1969]; letter of NY Council of Chs, Natl Assn of Social Workers, Bill Jacket, L 1969, ch 264; mem of Dept of Pub Affairs, Community Serv Socy of NY, Bill Jacket, L 1969, ch 264; letter on behalf of New York Socy for Prevention of Cruelty to Children, Bill Jacket, L 1969, ch 264). Additional questions were raised concerning the appropriateness of other procedures under the newly enacted child abuse provisions of Family Court Act article 10 (see, Note, *New York's Child Abuse Laws: Inadequacies In The Present Statutory Structure,* 55 Cornell L Rev 298 [1970]).

The Legislature responded quickly again by consolidating the neglect and abuse proceedings under an amended article 10 (see, L 1970, ch 962). The District Attorney's role was changed from lead counsel for the State to "necessary party", and police attorneys were deleted (Family Ct Act § 254 [b]) as Law Guardians resumed the role of acting as the abused child's representative (Family Ct Act § 249). The Corporation Counsel in the City of New York, and the County Attorney in counties outside the City of New York who serve as counsel for their local child welfare agencies, were charged with the primary responsibility for representing the interests of petitioners in virtually all cases (Family Ct Act § 254 [a]; § 1032).

The realignment of lawyering responsibilities under the current provisions of the Family Court Act is important to our analysis. The District Attorney no longer has standing to originate abuse proceedings under Family Court Act article 10 without leave of the court (see, Family Ct Act § 1032). The Legislature also deleted the requirement that Assistant Dis-

trict Attorneys be assigned to aid in the disposition of abuse matters in the Family Court.

However, even though the District Attorney's original function was given to the County Attorney, the District Attorney was named "a necessary party to the proceeding" (Family Ct Act § 254 [b]). Douglas J. Besharov, author of the Practice Commentary to Family Court Act § 254, recalls that the "necessary party" designation for both the District Attorney and the Corporation Counsel was adopted because: "This language was the result of a legislative compromise meant to insure that these legal officers would have notice of and be available for all child protective proceedings without automatically displacing the role or function of the petitioner's counsel, if one is present. In cases involving child abuse, the Corporation Counsel and District Attorney are required to be parties to the proceeding in order to insure the fullest possible development of facts and law so that the children's safety and well-being are best protected" (Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 254, at 226).

The quoted explanation focuses on notice and the deployment of resources so as to best protect abused children. In 1970 when the new child protective law took effect, there was no formalized system for notification to a prosecutor's office of suspected abuse. Rather, the police and child care providers were expected to report allegedly criminal abuse. Today, the reporting requirements are statutory as part of an elaborate notification and investigation scheme first adopted in 1973 as the Child Protective Services Act (see, Social Services Law § 411 et seq.). In a case in which a child dies, the appropriate District Attorney must be notified by the investigating child protective agency and reports of other types of abuse are to be forwarded upon written request by the prosecutor (see, Social Services Law § 424 [4]). In addition, Family Court Act § 1014 (a) permits the Family Court to activate the criminal process if it concludes that Family Court proceedings are "inappropriate or insufficient". In sum, although the statute requires it, there is no longer a compelling need to make the District Attorney a "necessary party" to all civil abuse proceedings. The issue of available resources to investigate and prosecute allegations of child abuse is somewhat more problematic.

Resources are essential if cases are to be adequately investigated and presented. The 1970 legislation under review made no provision for additional funding to investigate and present

civil abuse allegations. While the legislative history makes no mention of this factor as playing a role in the decision of the Legislature to exclude the District Attorneys within the City of New York from "necessary party" status, lack of funding to discharge additional responsibilities likely played a role. However, New York City's Corporation Counsel's office was a large office even in 1970, and today it has a full-time branch that handles Family Court cases exclusively. Nothing comparable could be found outside the City of New York. Indeed, in 1970 many County Attorney offices were staffed by part-time lawyers with limited funding. The District Attorney who regularly worked with the police must have seemed to the Legislature a logical participant in abuse investigations, thus making the resources of the prosecutor's office available. Surely if there were to be concurrent criminal and civil cases, the District Attorney and the County Attorney could share in the investigation. Absent a criminal case, the decision to commit prosecutorial resources to a civil abuse proceeding would call for a case-by-case decision by the county prosecutor. By designating the District Attorney a "necessary party", perhaps the Legislature intended to encourage that option. However, it cannot be suggested that it was expected that the District Attorney would share lead counsel status with the County Attorney. Aside from objections to two lawyers performing the same function (see, Matter of Williams, 120 Misc 2d 269, supra), the presentment responsibility was clearly delegated to the County Attorney (see, Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 254, at 221-227), and in counties like Westchester, that responsibility is discharged today by a staff of lawyers specifically assigned that task. In short, the District Attorney's "necessary party" status confers no responsibility beyond the duty to cooperate in the effort to protect abused children. In the City of New York, the Corporation Counsel has a clear role as the petition presenter in most cases. Thus, nothing is gained in those cases by also designating the Corporation Counsel "a necessary party to the proceeding". Outside the City of New York, the District Attorney's function is far less clear. If the District Attorney were permitted to duplicate the County Attorney's role, then one brand of justice would be dispensed in the City of New York and another outside its confines. Indeed, the very issue that we address on this appeal can only be presented in cases arising outside the City of New York because the District Attorney is never a party to or a partici-

pant in civil child abuse proceedings in the Family Courts of the counties comprising the City of New York (Family Ct Act § 254 [b]; *see, Nelson v Dufficy,* 104 AD2d 234). The anomalous circumstance of having one rule in New York City and another outside it surely was not intended by the Legislature.

In the case at bar, the child's interests in the context of the article 10 proceeding were adequately protected by a determination of either abuse or neglect because the dispositional remedies available to protect her were the same irrespective of whether the court sustained a finding of neglect or abuse *(see,* Family Ct Act § 1052). Both the petitioner and the child were represented by independent counsel. Thus, there was no valid reason for the District Attorney to intervene or object to the disposition of the Family Court case, or to insist on a plenary determination on the issue of abuse, since it had no impact on the filing of criminal charges. The District Attorney would have had an incentive to litigate further if that had been necessary to avoid having collateral estoppel preclude a criminal prosecution. However, we hold today that the application of issue preclusion in such a situation would contravene the "litigation-limiting" purposes of the doctrine and simply encourage overlitigation at an earlier stage *(Staatsburg Water Co. v Staatsburg Fire Dist.,* 72 NY2d 147, 155). Indeed, it is clear that the parties did not contemplate the possibility that a determination by the Family Court sustaining neglect but not abuse would act as a bar to a later prosecution for the same act. The Family Court Act contemplates separate but concurrent civil and criminal cases arising from allegations of abuse (Family Ct Act §§ 1013, 1014). Without attempting to exhaustively define what the Legislature intended by naming the District Attorney as a "necessary party"[4] in civil abuse cases filed outside New York City, we are satisfied in this case that the District Attorney's election to simply monitor the proceedings with a nonlawyer domestic violence aide employed in his office had no adverse impact on the filing of criminal charges.

---

4. "Necessary party" is not defined by the CPLR, although prior law spoke of "indispensable" and "conditionally necessary" parties (Civ Prac Act § 193, as added by L 1946, ch 971, § 3). Currently, CPLR 1001 (a) deals with "Persons who ought to be parties if complete relief is to be accorded". In any case, the District Attorney cannot be permitted to duplicate the work of the County Attorney *(see, Matter of Williams,* 120 Misc 2d 269, 272, *supra).*

## III

The County Court overlooked important policy considerations in allowing the prior determination in the Family Court proceeding to be given collateral estoppel effect in the instant criminal proceeding. The doctrine of issue preclusion, commonly referred to as collateral estoppel, originated in civil litigation. It is designed to conserve time and judicial resources by barring a party from relitigating issues decided in a prior action, provided that he or she had a full and fair opportunity to contest the determination said to be controlling *(see, Schwartz v Public Adm'r of County of Bronx,* 24 NY2d 65).[5] "It serves an important role in civil cases, where it originated and where society's primary concern is to provide a means of peaceful, swift and impartial resolution of private disputes * * * It is less relevant in criminal cases where the pre-eminent concern is to reach a correct result and where other considerations peculiar to criminal prosecutions may outweigh the need to avoid repetitive litigation * * * Thus, although it is frequently said that collateral estoppel applies to criminal cases * * * it cannot be applied in quite the same way as in civil cases" *(People v Plevy,* 52 NY2d 58, 64-65; *see also, People v Berkowitz,* 50 NY2d 333, 345, *supra).*

The Court of Appeals has consistently emphasized that issue preclusion is an elastic doctrine which should not be mechanically applied in either a civil or criminal case, even when it may appear that its basic requirements have been met *(see, People v Fagan,* 66 NY2d 815, 816; *Gilberg v Barbieri,* 53 NY2d 285, 292). In *Staatsburg Water Co. v Staatsburg Fire Dist.* (72 NY2d 147, 153, *supra),* the Court stated: "In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate

---

5. It cannot be said that the defendant satisfied his burden of establishing that the issue of his innocence or guilt of the crimes charged was determined in his favor by the Family Court's determination sustaining neglect but not abuse *(see, People v Berkowitz,* 50 NY2d 333, 346; *Nelson v Dufficy,* 104 AD2d 234, *supra).* A commentator suggests that Family Court Judges may sometimes make a finding of neglect "even though abuse has been or can be established, in order to avoid antagonizing, threatening, or stigmatizing the parents" (Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1031, at 341). The record supports such an analysis in this case.

results. No rigid rules are possible, because even these factors may vary in relative importance depending on the nature of the proceedings".

In *People v Fagan (supra)*, the Court of Appeals rejected the defendant's contention that dismissal of charges lodged against him by the State, following a parole revocation hearing, should be given collateral estoppel effect to bar a later prosecution based on the same acts. Although the formal prerequisites for collateral estoppel had been met, the Court held that "[s]trong policy considerations militate against giving issues determined in prior litigation preclusive effect in a criminal case, and indeed we have never done so" *(People v Fagan, supra,* at 816; *see also, People v Plevy, supra,* at 65, n 4). Further, the Court noted: "The correct determination of guilt or innocence is paramount in criminal cases *(People v Berkowitz,* 50 NY2d 333, 345), and the People's incentive to litigate in a felony prosecution would presumably be stronger than in a parole revocation proceeding" *(People v Fagan, supra,* at 816).

Because the State's paramount interest in the Family Court setting is to provide quick access to the court and protection for the abused child rather than to punish the parent named as a respondent *(see, Matter of Diane P.,* 110 AD2d 354, 357), a proceeding pursuant to Family Court Act article 10 is considered civil in nature *(see, People v Smith,* 62 NY2d 306). Less than a decade ago, in *Nelson v Dufficy* (104 AD2d 234, *supra)*, this Court, emphasizing the civil nature of the proceedings, refused to give a determination favorable to the respondent collateral estoppel effect to bar a later criminal prosecution of the same charge. The District Attorney was not a necessary party to the Family Court proceedings in *Nelson v Dufficy (supra)* because the matter was filed in New York City, where the Corporation Counsel, rather than the District Attorney, was named as a necessary party *(see,* Family Ct Act § 254 [b]), so there was no identity of parties. However, the broad policy considerations enunciated by the Court of Appeals in *People v Fagan (supra)* were an additional reason for the ruling in *Nelson v Dufficy (supra)* and they apply with equal force in the case at bar *(see also, People v Bosilkofski,* 134 AD2d 869, 870; Restatement [Second] of Judgments § 28 [3], [5]). Thus, irrespective of what role the District Attorney serves as a "necessary party" in the Family Court abuse proceeding, we conclude that collateral estoppel should not be applied to bar the prosecution of the criminal charges here.

Accordingly, the order dismissing the first three counts of the indictment is reversed and the matter is remitted to the County Court, Westchester County, for further proceedings consistent herewith.

SULLIVAN, J. P., MILLER and PIZZUTO, JJ., concur.

Order that the order is reversed, on the law, that branch of the defendant's motion which was to dismiss the first three counts of the indictment is denied, those counts of the indictment are reinstated, and the matter is remitted to the County Court, Westchester County, for further proceedings consistent herewith.