OPINION OF THE COURT
 

 Ciparick, J.
 

 The genesis of this criminal action is an April 29, 1990 incident which resulted in a Family Court determination that defendant neglected his three-year-old daughter. The issue framed for our review is whether the doctrine of collateral estoppel precludes the criminal prosecution of defendant for the same incident that resulted in the neglect finding.
 

 I.
 

 On April 29, 1990, the child sustained severe burns to her buttocks and right foot when defendant placed her in a bathtub containing scalding hot water. In response to her squirming and screaming, defendant claims he removed his daughter from the tub, saw that her skin was burned, administered cold water and cocoa butter and took her to a local hospital for emergency treatment. The Westchester County Department of Social Services (DSS) was promptly apprised of the incident, and on May 1, 1990, a caseworker from Child Protective Services interviewed defendant. On May 4, 1990, the child was placed in the temporary custody of DSS.
 

 On May 16, 1990, DSS filed an abuse and neglect petition in Family Court against defendant and the child’s mother alleging that the child was burned by scalding hot water on the buttocks and top of her right foot while in the care of defendant, and that the child’s mother failed to take appropriate measures to protect her daughter after she was informed of her injuries. The petition further charged that defendant’s explanation of the incident was inconsistent with his daughter’s injuries. The Westchester County District Attorney was
 
 *353
 
 named as a party to the petition pursuant to Family Court Act §254 (b).
 
 [1]
 
 At the July 6, 1990 Family Court fact-finding hearing,
 
 [2]
 
 defendant consented to withdraw his denial of the petition and, in lieu of a trial, provided a statement to the court regarding the April 29,1990 incident.
 

 Under oath, defendant stated that he tested the water and determined the water "was warm enough to take a bath.” He indicated that the child was crying at the time he placed her in the tub because, he thought, she did not want to take a bath. Defendant explained that the child had a bad temper which manifested itself in rebellious behavior, conduct defendant attributed to a case of lead poisoning. When the child began screaming and fighting, defendant, who was holding her by the shoulder, told her to sit down. Defendant noticed steam rising from the water, touched the water and did not find it hot. Then he saw the child’s body was "all messed up,” and he tended to her wounds with cold water and cocoa butter. When her skin peeled off, defendant decided to bring her to the hospital for treatment because he did not have cream and bandages.
 

 In response to the court’s query whether defendant learned a lesson from this incident, defendant replied, "I learned a big lesson.” The Assistant County Attorney proceeded to question defendant. Defendant was unable to explain why only his daughter’s right foot was burned or how her left foot stayed out of the water. During this questioning, defendant further admitted he originally lied about his responsibility for the incident, alternately blaming the mother and a woman named Dorothy for causing the child’s injuries.
 

 Upon conclusion of the hearing, Family Court sustained the petition, finding
 

 "[0]n or about April 29 [the child] was burned on the buttocks and top of her feet by scalding hot water while in the care and custody of [defendant].
 

 "The [defendant] explained to the Court how the injuries occurred and his explanation was very very credible as to how they occurred.
 

 
 *354
 
 ”[T]he Court, because of his explanation is going to make a finding of neglect rather than abuse, but again, the injuries are serious. So, I have to tell you again, when you have a child in your care and custody you got to be awful careful.
 

 'Tt’s not enough to say I did test the water when you put your finger in originally and it’s not enough to say you didn’t put your finger in it just before you put the child in. That is a crucial point, and, therefore, the petition is sustained as to neglect.”
 

 By order of fact-finding and interim disposition dated August 15, 1990, Family Court adjudged that the child was neglected by defendant and her mother. It was ordered that the child remain in the care and custody of DSS pending the dispositional hearing
 
 [3]
 
 and that DSS arrange for a psychological evaluation of the child. The order also directed DSS to arrange for psychological and psychiatric evaluations of defendant and the child’s mother.
 

 Thereafter, on September 26, 1990, defendant was indicted for assault in the first degree, criminal possession of a weapon in the fourth degree and endangering the welfare of a child as a result of the April 29, 1990 incident. The indictment further charged defendant with making a punishable false statement and perjury in the third degree in connection with his purported false statements on May 7, 1990 and May 11, 1990 regarding the incident.
 

 Approximately two months later, on November 16, 1990, Family Court held the dispositional hearing and issued an order directing that the child remain in the custody of DSS for an additional six months and that defendant participate in a parenting skills program and obtain job counselling.
 

 By omnibus motion dated November 16, 1990, defendant sought,
 
 inter alla,
 
 dismissal of the first three counts of the indictment relating to the April 29, 1990 incident on the ground that the People were collaterally estopped from relitigating whether defendant intentionally caused injury to his daughter by means of a dangerous instrument on that date. Defendant maintained that the Family Court’s finding that his conduct was not intentional constitutes a final determination
 
 *355
 
 in a prior proceeding in which all parties to that proceeding, including the District Attorney, had a full and fair opportunity to actually litigate that issue.
 

 County Court granted the motion, holding that collateral estoppel precluded the criminal prosecution of defendant on the first three counts of the indictment. Reasoning that nothing in the Family Court Act or the Criminal Procedure Law enjoins a criminal proceeding subsequent to a Family Court adjudication, County Court concluded that estoppel could be properly invoked in this case to bar the criminal prosecution
 
 (People v Roselle,
 
 152 Misc 2d 191, 194). County Court held that the issue of guilt or innocence was "necessarily” determined by Family Court in defendant’s favor and that the District Attorney was a necessary party to the Family Court proceeding pursuant to Family Court Act § 254 (b) and, therefore, had a "full and fair opportunity” to litigate the issue of abuse but instead "sat on [his] hands”
 
 (People v Roselle,
 
 152 Misc 2d, at 193,
 
 supra).
 

 In a comprehensive opinion that cogently identifies the legal and policy reasons why collateral estoppel does not bar the criminal prosecution of defendant, the Appellate Division reversed, reinstated the first three counts of the indictment and remitted to County Court for further proceedings
 
 (People v Roselle,
 
 193 AD2d 56).
 

 The matter is before us by leave of a Judge of this Court, and we now affirm.
 

 II.
 

 We begin by reiterating that the "separate and civil” nature of an article 10 proceeding is indelibly clear from its provisions
 
 (People v Smith,
 
 62 NY2d 306, 311). One of the stated purposes of article 10 is "to establish procedures to help protect children from injury or mistreatment and to help safeguard their physical, mental, and emotional well-being” (Family Ct Act § 1011). The orientation of Family Court is rehabilitative, directed at protecting the vulnerable child, as distinct from the penal nature of a criminal action which aims to assess blame for a wrongful act and punish the offender.
 

 In tracing the legislative history of article 10, Justice Ritter, writing for the Appellate Division, demonstrates that the role of the District Attorney in a child protective proceeding devolved into that of a "necessary party to the proceeding”
 

 
 *356
 
 (Family Ct Act § 254 [b]),
 
 [4]
 
 without standing to originate an article 10 proceeding absent leave of the court
 
 (see,
 
 Family Ct Act § 1032;
 
 see also, Matter of Weber v Stony Brook Hosp.,
 
 60 NY2d 208,
 
 cert denied
 
 464 US 1026). Justice Ritter suggests such status "confers no responsibility beyond the duty to cooperate in the effort to protect abused children,” and concludes that "the District Attorney’s election to simply monitor the proceedings with a nonlawyer domestic violence aide employed in his office had no adverse impact on the filing of criminal charges”
 
 (People v Roselle,
 
 193 AD2d, at 65-66,
 
 supra).
 

 Not only would it transmute the nature of a child protective proceeding to require the District Attorney to present the criminal case in an article 10 petition or forever be enjoined from such prosecution but it is also contrary to our jurisprudence to hold that the article 10 proceeding collaterally estops a criminal action emanating from the same incident
 
 (see,
 
 Family Ct Act § 1013 [b]; § 1014 [c];
 
 People v Aguilera,
 
 82 NY2d 23;
 
 People v Goodman,
 
 69 NY2d 32;
 
 People v Fagan,
 
 66 NY2d 815;
 
 People v Plevy,
 
 52 NY2d 58;
 
 People v Berkowitz,
 
 50 NY2d 333).
 

 From a policy perspective, collateral estoppel conserves the time and resources of the court and the litigants, furthering society’s interests in the peaceful, orderly and impartial resolution of disputes by enjoining repetitious litigation and the consequent potential for inconsistent results
 
 (see, People v Aguilera,
 
 82 NY2d, at 29-30,
 
 supra; Staatsburg Water Co. v Staatsburg Fire Dist.,
 
 72 NY2d 147, 150;
 
 Gilberg v Barbieri,
 
 53 NY2d 285, 290;
 
 People v Berkowitz,
 
 50 NY2d, at 345,
 
 supra).
 
 Collateral estoppel is "a long-recognized equitable reaction against allowing a party to relitigate issues which have already been decided against him”
 
 (People v Lo Cicero,
 
 14 NY2d 374, 380). Criminal defendants, unlike civil litigants, are protected by constitutional and statutory prohibitions against double jeopardy
 
 (see, People v Berkowitz,
 
 50 NY2d, at 345-346,
 
 supra; People v Goodman,
 
 69 NY2d, at 37-38,
 
 supra),
 
 rendering the litigation-limiting policy underlying collateral estoppel less compelling in a criminal action, particularly in view of the function of a criminal prosecution and society’s interest in the conviction of the guilty and acquittal of the innocent
 
 (see, People v Berkowitz,
 
 50 NY2d, at 345,
 
 supra).
 

 
 *357
 
 In any case, collateral estoppel, a flexible doctrine, should not be mechanically applied just because some of its formal prerequisites, like identity of parties, identity of issues, a final and valid prior judgment and a full and fair opportunity to litigate the prior determination, may be present
 
 (see, People v Plevy,
 
 52 NY2d, at 64,
 
 supra; Gilberg v Barbieri,
 
 53 NY2d, at 292,
 
 supra).
 
 Whenever collateral estoppel is in issue, the analysis whether a party had a full and fair opportunity to litigate requires consideration of the " ’realities of the * * * litigation’ ”
 
 (People v Plevy,
 
 52 NY2d, at 65,
 
 supra; see also, Gilberg v Barbieri,
 
 53 NY2d, at 292-293,
 
 supra),
 
 and it is critical that the issues are identical
 
 (see, Ryan v New York Tel. Co.,
 
 62 NY2d 494, 500). Applying these principles to the instant case, it is evident that collateral estoppel is inapplicable.
 

 While an article 10 petition may identify the perpetrator of enumerated abusive acts, the real subject of the petition is the child, whose welfare and safety are at the heart of a proceeding designed to expeditiously determine the most suitable environment for the child and institute corrective measures for the benefit of both the child and the parents. Notwithstanding that the same set of facts is in issue, defendant misapprehends the nature of the article 10 proceeding by arguing that the identical legal issue is the subject of this criminal action
 
 (see, People v Reisman,
 
 29 NY2d 278, 285-286,
 
 cert denied
 
 405 US 1041;
 
 People v Lo Cicero,
 
 14 NY2d, at 380,
 
 supra).
 

 The Family Court proceeding was not a trial, no evidence was presented against defendant, and only defendant’s sworn admission to the court formed the basis for the neglect adjudication. Defendant’s "testimony” was not in the nature of a defense but consisted of an explanatory statement of the incident. It was the function of Family Court to determine whether defendant’s admission constituted an admission of abuse and neglect or neglect alone, and then to fashion an expedient remedy. Actually in issue was defendant’s ability to adequately care for his daughter, not his criminal culpability. Significantly, a neglect finding can result in the possibility of the child’s placement outside the familial home, not a penal sanction against defendant. The desired end of the article 10 proceeding is to ensure the expeditious protection of the child’s welfare, not to secure a conviction against defendant
 
 (see, Gilberg v Barbieri,
 
 53 NY2d, at 293,
 
 supra).
 
 In this case,
 

 
 *358
 
 it was the County Attorney, not the District Attorney, who was charged with presenting the article 10 petition. The fact that the District Attorney was represented by a nonattorney Senior Domestic Violence Aide trained to monitor and detect abuse contemplated further development of the facts underlying the abuse petition in the event criminal prosecution was warranted.
 

 To the extent that the article 10 proceeding is directed at protecting the child, it is defendant’s parental rights that are at stake. In this regard, no legally cognizable identity of issues exists between the child protective proceeding, which seeks to safeguard the child, and a criminal action, which yields a final determination conclusive of defendant’s penal responsibility
 
 (see, Gilberg v Barbieri,
 
 53 NY2d, at 292,
 
 supra
 
 [point of inquiry is whether the prior determination should be accorded conclusive effect beyond the case in which it was made]). For purposes of deciding this case and the issue before us, it is of no consequence to the criminal prosecution that there was a final adjudication of neglect in the article 10 proceeding; such adjudication is dispositive only for purposes of placing the neglected child.
 

 III.
 

 We further note that a concurrent criminal action in which defendant’s conduct is at issue is plainly contemplated by article 10. Family Court Act § 1013 (b) provides that
 

 "For the protection of children, the family court has jurisdiction over proceedings under this article notwithstanding the fact that a criminal court also has or may be exercising jurisdiction over the facts alleged in the petition or complaint.”
 

 Further, section 1014 (c) provides that
 

 "Nothing is this article shall be interpreted to preclude concurrent proceedings in the family court and a criminal court.”
 

 Juxtaposed against article 10’s framework for safeguarding the child’s interest is the penal sanction for endangering the welfare of a child. Penal Law § 260.10 states
 

 "A person is guilty of endangering the welfare of a child when:
 

 "2. Being a parent * * * he fails or refuses to exercise reasonable diligence in the control of such
 
 *359
 
 child to prevent him from becoming * * * a 'neglected child’ * * * as [that] term [is] defined in article 10 * * * of the family court act.”
 

 In the prosecution of a parent for this crime, the District Attorney bears the heavy burden of demonstrating defendant’s guilt beyond a reasonable doubt, whereas in an article 10 proceeding, the determination that a child is neglected must be based on a preponderance of the evidence offered by the civil presenting agency (Family Ct Act § 1046 [b] [i]). Therefore, the use of evidence initially presented in the article 10 proceeding under the circumstances of this criminal action does not offend the Fifth Amendment’s Double Jeopardy Clause or defendant’s due process rights
 
 (see, People v Berkowitz,
 
 50 NY2d, at 345-346,
 
 supra; People v Goodman,
 
 69 NY2d, at 37-38,
 
 supra).
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Chief Judge Kaye and Judges Simons, Titone, Bellacosa, Smith and Levine concur.
 

 Order affirmed.
 

 [1]
 

 . Family Court Act § 254 (b) provides: "In all cases involving abuse, the corporation counsel of the city of New York and outside the city of New York, the appropriate district attorney shall be a necessary party to the proceeding.”
 

 [2]
 

 . "Fact-finding hearing” is defined in Family Court Act § 1044 as "a hearing to determine whether the child is an abused or neglected child as defined by this article.”
 

 [3]
 

 . Family Court Act § 1045 defines "dispositional hearing” as "a hearing to determine what order of disposition should be made.”
 

 [4]
 

 . In the City of New York, it is the Corporation Counsel, not the District Attorney, that must be named as a necessary party
 
 (see,
 
 Family Ct Act § 254 [bp.