OPINION OF THE COURT
John M. Hunt, J.
This case presents the unusual issue of whether a recent judicial determination that a parent is mentally ill which was made in the context of a proceeding to terminate parental rights conclusively establishes that the parent’s younger child, who is the subject of a child protective proceeding, is a neglected child.
I
By amended petition filed on December 20, 2002, petitioner Commissioner of the New York City Administration for Children’s Services alleges that the child, Jasmine R. (born Mar. 27, 2002), is a neglected child within the meaning of Family Court Act § 1012 (f). The petition further alleges respondent, Lee S., is the mother of the child and that Carlos R., a nonrespondent in this proceeding, is the child’s putative father. More specifically, the amended petition alleges, in pertinent part, that on October 25, 2005 the court found that Lee S. has abused her son, Sean M., based upon the fact that her daughter, Renee H. (born July 4, 1998), drowned in a bathtub while in the care of the mother. The respondent mother admitted to leaving the child Renee unattended in the tub of water for several minutes and she was ultimately convicted of manslaughter for the death of the child. On September 24, 2001, the court entered a dispositional order directing the respondent to complete domestic violence counseling, individual counseling and family counseling, but she has failed to do so. In addition, a termination of parental rights proceeding is pending against the mother in Family Court with respect to the child Sean. In addition, petitioner alleges that Ms. S. suffers from a chronic and severe mental illness and that, due to that mental illness, the child Jasmine is at risk of becoming a neglected child.
The initial appearance upon the petition was conducted on April 3, 2002 (see, Family Ct Act § 1033-b). On that date, respondent appeared before another Family Court Judge who assigned counsel to respondent, issued an order paroling Jasmine to the custody of her putative father, Carlos R. (Family Ct Act § 1027 [b] [i]), and directed that respondent have only supervised visitation with Jasmine (Family Ct Act § 1030 [a]). Thereafter, the Commissioner filed the amended petition on December 20, 2002.
*906 Prior to the filing of this child protective petition by the Commissioner, a petition had been filed against Ms. S. pursuant to Social Services Law § 384-b by Little Flower Children’s Services, an authorized child care agency (Social Services Law § 371 [10]), seeking termination of her parental rights to Sean M., an older half-sibling of Jasmine. That petition, filed on December 26, 2001, alleged that Ms. S. was mentally ill within the meaning of Social Services Law § 384-b (4) (c) and that she had permanently neglected Sean within the meaning of Social Services Law § 384-b (7) (a).[1] In connection with the termination of parental rights proceeding and pursuant to Social Services Law § 384-b (6) (e), this court directed that Ms. S. be examined by a licensed psychologist on the staff of the Family Court Mental Health Services Clinic (see, Matter of Alexander L., 60 NY2d 329 [1983]; Matter of Rosemary ZZ., 154 AD2d 734, 735 [1989], lv denied 75 NY2d 702 [1989]).
An extensive fact-finding hearing upon the termination of parental rights petition was conducted before this court. The hearing commenced on January 13, 2003 and concluded on October 2, 2004. Petitioner called Dr. Christopher Mongeau, a psychologist and the Associate Director of the Queens County Family Court Mental Health Services Clinic at the hearing. Dr. Mongeau testified that, based upon his review of relevant clinical and hospital records, which included previous reports of evaluations which have been conducted by Dr. Joe Scroppo and Dr. Mitchell Frank, both of whom were psychologists associated with the Mental Health Services Clinic at the time of their evaluations, as well as his interview of the respondent, he diagnosed her as being afflicted with “Depressive Disorder— Not Otherwise Specified,” “alcohol abuse — in remission,” “cannabis abuse — in remission” as well as “Borderline Personality Disorder,” all of which are diagnoses recognized in the Diagnostic and Statistical Manual of Mental Disorders (4th ed), an authoritative and widely used diagnostic tool. According to Dr. Mongeau, Ms. S.’s borderline personality disorder, which is a disorder situated between a diagnosis of neurosis and psychosis, *907 is a “long-standing” disorder which he found to be a “characterological problem,” meaning it was a lifelong disorder which is “developed during childhood, during a person’s developmental period” and that Ms. S. was afflicted with “a fairly severe manifestation of personality disorder.” Dr. Mongeau determined that Ms. S. lacked the capacity to provide proper care for Sean given her psychological problems, that “her parental capacity has been severely impacted by her personality deficits,” and that her psychological disorders had led her into several “highly dysfunctional interpersonal relationships, often involving abusive behavior.” While Ms. S. had been participating in therapy, Dr. Mongeau found that her parental capacity continued to be impaired and that “her current level of insight into her deficits remains at best superficial, and she demonstrates no change through her involvement in psychotherapy.”
According to Dr. Mongeau, psychotherapy was generally not effective in treating personality disorders, such as that with which Ms. S. was afflicted, and that “[g]iven the chronic and severe nature of her disorder and [her] long-standing deficits in insight, judgment and behavior, the [mother’s] prognosis for consistent recovery at this point is poor.” Thus, Dr. Mongeau concluded that “within a reasonable degree of clinical certainty, the respondent suffers from a mental disorder to the extent that the subject child, if returned to her care now or in the foreseeable future, would be at risk of becoming neglected, as would any child in her care.”
At the conclusion of the hearing, the court determined in a lengthy decision rendered on April 4, 2005 that clear and convincing evidence established that Ms. S. is mentally ill within the meaning of Social Services Law § 384-b (6) (a), that she was presently and for the foreseeable future unable, by reason of her mental illness, to provide proper and adequate care for Sean, and that he would be at risk of becoming a neglected child were he returned to her care. Accordingly, the court entered an order which terminated Ms. S.’s parental rights to the child Sean M. and committed guardianship and custody of the child to the authorized agency and the Administration for Children’s Services for the purpose of adoption.[2]
*908 II
Petitioner has moved for summary judgment upon the child protective petition pursuant to Civil Practice Law and Rules § 3212, contending that the finding of mental illness made by the court in the termination of parental rights concerning Sean conclusively establishes that Ms. S. is mentally ill for purposes of the child protective proceeding. The Law Guardian for the child has filed papers supporting the Commissioner’s motion and respondent has not filed papers in opposition to the motion.
Insofar as relevant to this proceeding, Family Court Act § 1012 defines a neglected child as a child under the age of 18 whose physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired as a result of the failure of his or her parent to exercise a minimum degree of care in providing the child with proper supervision or guardianship by unreasonably inflicting or allowing to be inflicted harm, or a substantial risk thereof, or by any other acts of a similarly serious nature requiring the aid of the court (Family Ct Act § 1012 [f] [i] [B]). It is well established that a parent’s affliction with a mental illness which affects his or her ability to provide proper care and supervision for a child is a basis'upon which to adjudicate a child to be neglected (Matter of Danielle M., 151 AD2d 240 [1989]; Matter of Zariyasta S., 158 AD2d 45 [1990]; Matter of Ayana E., 162 AD2d 330 [1990], lv denied 76 NY2d 708 [1990]; Matter of Michelle S., 195 AD2d 721 [1993]; Matter of Jodee M., 215 AD2d 101, 101 [1995], lv denied 86 NY2d 708 [1995]; Matter of Putnam County Dept. of Social Servs. [Philip R.], 234 AD2d 600, 601 [1996], lv denied 90 NY2d 804 [1997]; Matter of Khelia B., 298 AD2d 132 [2002]; Matter of Thalia L., 303 AD2d 162 [2003]; Matter ofMy’Kia A., 8 AD3d 481, 482 [2004]).
In the termination of parental rights proceeding concerning Jasmine’s half-sibling, respondent was evaluated by a court-appointed psychologist who testified at trial, as required by statute (Social Services Law § 384-b [6] [e]), and respondent presented no expert testimony to contradict the testimony of the court-appointed psychologist. At the conclusion of the hearing, the court found by clear and convincing evidence (see, Social Services Law § 384-b [3] [g]; Matter of Dochingozi B., 57 NY2d 641, 642 [1982]; Matter of Michael B., 80 NY2d 299, 310 [1992]; Matter of Katherine L., 8 AD3d 124 [2004]) that Ms. S. suffers from
“an affliction with a mental disease or mental condi *909 tion which is manifested by a disorder or disturbance in behavior, feeling, thinking or judgment to such an extent that if [the] child were placed or returned to [her] custody . . . , the child would be in danger of becoming a neglected child as defined in the family court act” (Social Services Law § 384-b [6] [a]; see, Matter of Joyce T., 65 NY2d 39, 45-46 [1985]; Matter of Nina D., 6 AD3d 702, 703 [2004]; Matter of Rashawn L.B., 8 AD3d 267, 268 [2004]; Matter of Alonzo Jason D., 9 AD3d 461, 462 [2004]; Matter of Malik J., 13 AD3d 628 [2004]; Matter of Karyn Katrina D., 19 AD3d 592 [2005]).
Notably, while respondent was examined by a court-appointed psychologist who testified in the termination of parental rights proceeding, in a child protective proceeding there is no requirement that there be a formal diagnosis that the parent is mentally ill, nor is there a requirement that the parent be evaluated and that a court take expert testimony, before a child may be found to be neglected by reason of a parent’s mental illness (Matter of Zariyasta S. at 48; Matter of Danielle M. at 243; Matter of Jessica R., 230 AD2d 108, 112 [1997]; Matter of Barbara S., 244 AD2d 556, 557 [1997]; Matter of Caress S., 250 AD2d 490 [1998]; Matter of Krewsean S., 273 AD2d 393, 394 [2000]).
A
Summary judgment is a highly useful device for expediting the just disposition of a legal dispute (Matter of Suffolk County Dept. of Social Servs. v James M., 83 NY2d 178, 182; Ferrante v American Lung Assn., 90 NY2d 623, 631 [1997]; Forrest v Jewish Guild for Blind, 3 NY3d 295, 305 [2004]). While summary judgment is not specifically provided for in the Family Court Act, it has been recognized that the court may grant summary judgment in a child protective proceeding or a termination of parental rights proceeding in order to expedite the resolution of a case where there are no issues requiring a trial (Matter of Suffolk County Dept. of Social Servs. v James M., 83 NY2d 178, 182 [1994]; Matter of Kyle M., 5 AD3d 489 [2004]; Matter of Gregory George L., 19 AD3d 592 [2005]; Matter of Jeovanny P., 213 AD2d 717 [1995]; Matter of Brian B., 283 AD2d 424 [2001], lv dismissed in part and denied in part 96 NY2d 929 [2001]; Matter of Nora M., 300 AD2d 922, 923 [2002]).
In this case, petitioner argues that the court’s recent finding that Ms. S. is mentally ill in the termination of parental rights *910 proceeding conclusively establishes that Jasmine is a neglected child under article 10 of the Family Court Act. In other words, petitioner contends that respondent should be precluded from relitigating the issue of whether she is mentally ill and whether Jasmine is neglected by reason of that mental illness under the doctrine of collateral estoppel.
“The doctrine of collateral estoppel, a narrower species of res judicata, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same” (Ryan v New York Tel. Co., 62 NY2d 494, 500 [1984]; see, Gramatan Home Invs. Corp. v Lopez, 46 NY2d 481, 485 [1979]; Staatsburg Water Co. v Staatsburg Fire Dist., 72 NY2d 147, 152 [1988]; People v Roselle, 84 NY2d 350, 356 [1994]; Parker v Blauvelt Volunteer Fire Co., 93 NY2d 343, 349 [1999]; Buechel v Bain, 97 NY2d 295, 303 [2001], cert denied 535 US 1096 [2002]).
“Two requirements must be met before collateral estoppel can be invoked. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and there must have been a full and fair opportunity to contest the decision now said to be controlling” (Buechel v Bain at 303-304; see, Gramatan Home Invs. Corp. v Lopez at 485; Ryan v New York Tel. Co. at 500-501; Matter of Suffolk County Dept. of Social Servs. v James M. at 182-183; Matter of Juan C. v Cortines, 89 NY2d 659, 667 [1997]; Parker v Blauvelt Volunteer Fire Co. at 349; Jeffreys v Griffin, 1 NY3d 34, 39 [2003]).
Collateral estoppel is a “flexible doctrine” that should not be mechanically applied by the courts. In determining whether to apply collateral estoppel, the court must undertake a “case-by-case analysis of the facts and realities” of the previous litigation (Beuchel v Bain at 304), which should include a determination of whether there is identity of party, identity of issue, as well as consideration of the nonmoving party’s incentive to litigate the prior case and the actual extent of that litigation, among other factors (Ryan v New York Tel. Co. at 501; Staatsburg Water Co. v Staatsburg Fire Dist. at 153; People v Roselle at 357; Clemens v Apple, 65 NY2d 746, 748 [1985]; Matter of Juan C. v Cortines *911 at 667; Bueehel v Bain at 304). “In the end, the fundamental inquiry is whether relitigation should be permitted in a particular case in light of what are often competing policy considerations, including fairness to the parties, conservation of the resources of the court and the litigants, and the societal interests in consistent and accurate results” (Staatsburg Water Co. v Staatsburg Fire Dist. at 153; see, Bueehel v Bain at 304).
In this case, Ms. S. was a party to the termination of parental rights proceedings and she is the respondent in this child protective proceeding. Moreover, the issue necessarily determined by this court in the termination proceeding, that Ms. S. is mentally ill within the meaning of Social Services Law § 384-b (6) (a), is substantially identical to the issue presented in this child protective proceeding which also alleges that she is mentally ill. In addition, Ms. S. had a full and fair opportunity to litigate the issues before the court in the termination of parental rights proceeding and she did so with the assistance of counsel over a period that encompassed December 26, 2001 through October 2, 2004. Thus, the two essential requirements for application of collateral estoppel are established here (Gramatan Home Invs. Corp. v Lopez at 485; People v Roselle at 357; Matter of Juan C. v Cortines, 89 NY2d at 667; Parker v Blauvelt Volunteer Fire Co. at 349; Jeffreys v Griffin at 39). The court has further considered that respondent had significant incentive and initiative to litigate the termination proceeding, given that a finding in that proceeding would result in a permanent termination of her parental rights to her son with a concomitant loss of any right to visit, communicate with, or regain custody of the child (Matter of Ricky Ralph M., 56 NY2d 77, 80 [1982]; Matter of Santosky v Roach, 161 AD2d 908 [1990], appeal dismissed 76 NY2d 981 [1990]), and the prior case was fully litigated by all parties, including the law guardian for the child. Moreover, respondent was aware of the pendency of this child protective proceeding at the time that the termination proceeding proceeded to trial and she and her attorney knew or should have known that a finding in the termination case could affect the outcome in this case, since the issues in both proceedings are essentially identical and because a finding of neglect under article 10 need only be established by a preponderance of the evidence (Family Ct Act § 1046 [b] [i]; Matter of Tammie Z., 66 NY2d 1, 3 [1985]; Matter of Jamie TT., 191 AD2d 132, 134 [1993]). Finally, the court observes that respondent presented no arguments in opposition to petitioner’s motion for summary judgment which the court *912 deems to be a concession that the mental illness finding made in the termination of parental rights proceeding conclusively establishes that Jasmine is a neglected child by reason of that same mental illness, or at the very least, that she can present no evidence which would demonstrate- that she is no longer mentally ill, or that her mental illness would not place Jasmine in imminent danger of becoming a neglected child.
Accordingly, the court finds that respondent is barred from relitigating the issue of whether she is presently and for the foreseeable future mentally ill as well as whether Jasmine would be in imminent danger were she to continue in the custody of the mother. Therefore, the court concludes that there are no triable issues of fact and that petitioner is entitled to judgment upon the child protective petition as a matter of law (Ferrante v American Lung Assn. at 630-631; Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Sommer v Federal Signal Corp., 79 NY2d 540, 555 [1992]; Bowie v 2377 Creston Realty, LLC, 14 AD3d 457, 458-459 [2005]).
The motion for summary judgment is granted and the child, Jasmine R, is adjudicated to be a neglected child within the meaning of Family Court Act § 1012 (f) (i) (B), and the case is set down for a dispositional hearing (Matter of Suffolk County Dept. of Social Servs. v James M. at 183; Matter of Amanda B., 287 AD2d 561, 562 [2001]; Matter of Nyomi A.D., 10 AD3d 684, 686 [2004]).

. Sean M. had been placed in foster care after his younger half-sister, Renee H., drowned in a bathtub while in the care of Ms. S. on May 26, 1999. Ms. S. was ultimately convicted by the Supreme Court, Queens County, of manslaughter in the second degree and was sentenced to six months of incarceration and five years of probation supervision, and the Family Court adjudicated Sean to be an abused child within the meaning of Family Court Act § 1012 (e) and placed him in the custody of the Administration for Children’s Services.

. This court further found, by clear and convincing evidence, that Sean M. had been permanently neglected by Ms. S., as defined by Social Services Law § 384-b (7) (a).