■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSEPH SWINTON and SILVA SWINTON, Appellants. [801 NYS2d 403]—

Appeal by the defendants from two judgments of the Supreme Court, Queens County (Buchter, J.), both rendered May 19, 2003, convicting them of assault in the first degree, reckless

endangerment in the first degree, and endangering the welfare of a child, upon jury verdicts, and imposing sentences.

Ordered that the judgments are modified, on the law, by vacating the convictions of reckless endangerment in the first degree under count two of the indictment, vacating the sentences imposed thereon, and dismissing that count of the indictment; as so modified, the judgments are affirmed.

As the People correctly concede, reckless endangerment in the first degree is a lesser-included offense of assault in the first degree (*see* Penal Law § 120.10 [3]; § 120.25). Therefore, the convictions of and sentences for reckless endangerment in the first degree must be vacated and that count of the indictment dismissed (*see* CPL 300.40 [3] [b]; *People v Cotton,* 214 AD2d 994 [1995]; *People v Wilson,* 129 AD2d 514, 515 [1987]; *People v Gutierrez,* 105 AD2d 754, 755 [1984]).

Viewing the evidence in the light most favorable to the prosecution (*see People v Contes,* 60 NY2d 620 [1983]), we find that it was legally sufficient to establish the defendants' guilt of the remaining counts beyond a reasonable doubt. Moreover, upon the exercise of our factual review power, we are satisfied that the verdict of guilt on those counts was not against the weight of the evidence (*see* CPL 470.15 [5]).

The defendants contend that certain comments made by the prosecutor during summation were improper. Insofar as their claims are preserved for appellate review, the comments objected to did not result in substantial prejudice to the defense and therefore do not warrant reversal (*compare People v Galloway,* 54 NY2d 396 [1981], *with People v Ashwal,* 39 NY2d 105 [1976]; *see People v Brosnan,* 32 NY2d 254, 261-262 [1973]; *People v Duncan,* 2 AD3d 455 [2003]; *People v Lowery,* 281 AD2d 491 [2001]; *People v Miller,* 143 AD2d 1055 [1988]).

The sentences imposed were not excessive (*see* CPL 470.15 [2] [c]; [6] [b]; 470.20 [6]; *People v Thompson,* 60 NY2d 513, 519 [1983]; *People v Suitte,* 90 AD2d 80 [1982]).

The defendants' remaining contentions are either unpreserved for appellate review or without merit. Adams, J.P., Crane and Mastro, JJ., concur.

S. Miller, J., concurs in part and dissents in part, and votes to modify the judgments, on the law, by vacating the convictions of assault in the first degree and reckless endangerment in the first degree under counts one and two of the indictment, vacating the sentences imposed thereon, dismissing those counts of the indictment, and otherwise affirming the judgments, with the following memorandum: I simply cannot concur with my

colleagues in the majority insofar as they have concluded that the People proved the defendants' guilt of the crime of assault in the first degree beyond a reasonable doubt. The defendants may have been naive, and misguided, and even unfit to serve as the custodians of their child. What they did not do, however, is evince criminal recklessness. For this reason I dissent in part.

The defendants are the parents of a baby girl named "Ice," who was born July 31, 2000. Based upon her personal experiences, the defendant mother became mistrustful of doctors and modern medicine. As a result, the defendant mother researched childbirth alternatives, eschewed professional medical services, and gave birth to Ice at home, assisted only by the defendant father. Ice weighed approximately three pounds at birth.

The defendants are strict vegetarians. They determined that they would raise Ice on a vegetarian diet. It is not seriously controverted that Ice did not flourish on this diet. She remained undernourished and underdeveloped to the extent that when Ice came to the attention of child welfare authorities in November 2001, when she was approximately 16 months of age, she weighed 10 pounds when she should have weighed about 25 pounds. Ice had no teeth, underdeveloped and soft bones, and was unable to support her own head or bear her own weight. These and numerous other conditions were caused by "severe malnutrition secondary to insufficient intake of calories and protein and nutrition." In short, the strict vegetarian diet provided by the defendants was to blame for Ice's many maladies.

Clearly the defendants' treatment of Ice warranted involvement of child welfare officials (*see* Family Ct Act art 10). What is less clear to me is the need for criminal prosecution. The defendants each stand convicted, inter alia, of assault in the first degree. While I do not dispute the conclusion that the evidence adduced at trial was legally sufficient, under the unusual circumstances herein, I find that the jury's verdict was contrary to the weight of the evidence. Accordingly, I would reverse the assault convictions and dismiss the count charging same.

To sustain a judgment of conviction, this Court must determine both that the prosecution adduced legally sufficient evidence and that the jury's verdict is in accord with the weight of the evidence (*see People v Bleakley*, 69 NY2d 490, 495 [1987]). This latter standard requires us to " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony' " (*id.* at 495, quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]). "If it appears that the trier of fact has failed to

give the evidence the weight it should be accorded, then [we] may set aside the verdict" (*People v Bleakley, supra* at 495).

Insofar as pertinent, the defendants were convicted of assault in the first degree in violation of Penal Law § 120.10 (3). A person is guilty of assault in the first degree when, "[u]nder circumstances evincing a depraved indifference to human life, he [or she] recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes serious physical injury to another person" (Penal Law § 120.10 [3]). "A person acts recklessly with respect to a result or to a circumstance described by a statute defining an offense when he [or she] is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists" (Penal Law § 15.05 [3]). "Under New York's [penal] statute the significant element [of recklessness] is *scienter,* a showing that [the] defendant was '*aware* of and *consciously* disregard[ed] a substantial and unjustifiable risk' " (*People v Cruciani*, 36 NY2d 304, 305 [1975], quoting Penal Law § 15.05]).

There was a substantial body of evidence presented at trial, by both the prosecution and the defense, which indicated that the defendants were not aware of the risks that the food they were preparing for their child was harmful to her. As a general matter, the evidence established that the defendants were loving, caring parents, who attended to their child's nutritional needs, albeit in a non-mainstream manner; they really thought they were adequately providing for Ice's nutrition. Their lack of awareness was recognized by a physician in the psychiatry department at Schneider Children's Hospital who noted, "Both parents of patient are not able to grasp the severity of sequelae of their daughter's medical condition." Furthermore, numerous statements made by the defendants, adduced as evidence by the prosecution, underscore their lack of awareness. Even Justice Buchter, in pronouncing sentence, lamented: "It is true as they [the defendants] say, they clearly made extensive although wrongheaded efforts to care for Ice in accordance with their beliefs. Oddly enough, they may have deluded themselves into believing that they were doing something positive."

The prosecution sought to establish the defendants' recklessness by adducing evidence, inter alia, of the physical appearance of the baby and her failure to reach developmental milestones. Indeed, Ice weighed only 10 pounds at the age of 16 months. However, the People's reliance upon *People v Word* (260 AD2d 196 [1999]) to support their contention of recklessness is misplaced. In *Word* (*id.*), the defendant was convicted of second

degree murder for allowing her child to die from starvation and dehydration (*see People v Sika*, 138 AD2d 935 [1988]; *People v Gladden*, 118 Misc 2d 831 [1983]). However, these cases are clearly distinguishable. There the defendants wholly failed to care for their children, whereas here Ice was regularly fed and there was no evidence that she was dehydrated. In fact, the prosecution's witness, Dr. Lanou, testified that not everyone would know that Ice's diet was higher in fiber than a commercial formula diet, which would result in diarrhea, causing a fair amount of nutrients to be eliminated.

The prosecution points to Ice's physical appearance as proof that the defendants must have known of the risks to Ice's health. Although Ice was drastically underweight at 16 months, there is no evidence that she ever lost weight. Rather, the evidence demonstrated that Ice did gain weight and grew from the time of her birth. The defendant mother testified that she knew a major milestone for a baby was to triple her birth weight in the first year, which Ice in fact, did. Based on Ice reaching this milestone and attributing her lack of body fat to her low-fat vegan diet, the evidence corroborates that the defendants believed Ice to be healthy.

The defendants additionally presented evidence to account for the other physical symptoms of Ice's condition. They attributed the symptoms of rickets, Ice's bowed, out-turned leg, to the fact that Ice was double-jointed. They also claimed that they were not concerned with lanugo, a condition in which fine hair is on the baby's body, attributing it to the fact that the defendant mother was herself a hairy person.

Further evidence presented by the prosecution contradicts the prosecution's claims that Ice's medical problems were readily apparent from her physical appearance. An emergency medical technician who responded to the Swinton household on November 6, 2001, did not regard Ice to be in imminent danger and reported to child welfare authorities that the baby was small but otherwise healthy. Similarly, a social worker from the Administration for Children's Services testified that on November 7, 2001, she visited the defendants' home and did not see cause to remove the child.

The defendant father's ability to comprehend the risk was placed further into question by evidence that he has a below average IQ. A certified psychologist testified that he determined the defendant father's IQ to be 78 (*see People v Baker*, 4 AD3d 606, 611 [2004]). In short, there is no question that the defendants were uninformed, misguided parents. The weight of the evidence, however, did not prove that they consciously

disregarded known risks, and thus their assault convictions should be reversed as contrary to the weight of the evidence.

I do, however, concur insofar as the evidence proved the defendants' guilt of endangering the welfare of a child beyond a reasonable doubt. The defendants were convicted of one count each of endangering Ice's welfare pursuant to Penal Law § 260.10 (2), which, insofar as pertinent herein, is violated when a parent "fails or refuses to exercise reasonable diligence in the control of such child to prevent [her] from becoming . . . a neglected child" within the meaning of Family Court Act article 10 (*see People v Roselle*, 84 NY2d 350, 358-359 [1994]). Notwithstanding my conclusion that the defendants did not evince criminal recklessness, they do not controvert the fact that Ice was found to be a neglected child, nor do they argue that they exercised reasonable diligence to prevent her from becoming a neglected child.