OPINION OF THE COURT
Wachtler, J.
The question on this appeal is whether a conviction for the petty offense of harassment can later be used to preclude the defendant from disputing the merits of a civil suit for assault, involving the same incident and seeking a quarter of a million dollars in damages. The Trial Court held that collateral estoppel precluded the defendant from contesting the merits of the civil complaint and that the plaintiff was therefore entitled to summary judgment on the liability issue. The Appellate Division affirmed with one dissent and granted the defendant leave to appeal to this court on a certified question concerning the correctness of its order.
Plaintiff is a lawyer who for many years had been representing defendant’s former wife in various matrimonial proceedings involving the defendant. In February, 1976 he *289 called the defendant to appear for an examination before trial in connection with a claimed breach of a separation agreement. Defendant arrived at plaintiff’s office without an attorney and repeatedly refused to answer questions until he had retained a lawyer. After several minutes of unproductive questioning plaintiff granted defendant an adjournment and shouted at him to get out of his office. Defendant then came around the desk toward the plaintiff and the two men scuffled until pulled apart by the plaintiff’s sons. The plaintiff recovered the defendant’s glasses and threw them at him. As he left, the defendant reciprocated by throwing plaintiff’s glasses at him.
Plaintiff filed an information accusing defendant of harassment, a petty offense designated a violation by the Penal Law.* A nonjury trial was held in the City Court of Mount Vernon on the afternoon of July 27, 1976. The plaintiff testified that after he told the defendant to leave the defendant stood up, came around to where the plaintiff was seated behind his desk and repeatedly “pummelled” him. The defendant stated that he had merely shoved the plaintiff in self-defense when the plaintiff shouted at him to get out and reached, in a threatening manner, toward a hard object on his desk. The stenographer, called by the People, testified that both men rose from their chairs and grappled after- a heated exchange. She claimed, however, that the defendant struck the first blow.
During the brief trial the court informed defense counsel that a felony hearing was scheduled to begin when this trial concluded. At the close of arguments for both sides the court immediately found the defendant guilty of harassment for “using physical force against” the plaintiff. The court noted, however, “You’re not found guilty of a crime, it’s a violation. It’s merely a pushing or shoving of somebody, it’s not assault third degree.” The court also immediately sentenced the defendant to a one-year conditional discharge, the condition being that “you are not to have any encounters *290 with the law firm of Gilberg and Gilberg whether you like it or not.” The court strongly suggested that the defendant retain a lawyer to act as his spokesman in future dealings' with his former wife’s attorneys.
The plaintiff then commenced this civil action for assault. The summons was issued the day following the defendant’s conviction for harassment. The complaint, subsequently served, alleges that the defendant “assaulted and beat” the plaintiff “by striking him repeatedly”. A quarter of a million dollars in damages are sought for injuries which allegedly include emotional distress, “injuries to head, face, arm and chest, causing discomfort, massive sweating, diarrhea, nausea” and aggravation of a preexisting heart condition.
After the case had been placed on the jury calendar plain-. tiff moved for summary judgment noting that the defendant had previously been convicted of harassment as a result of this incident and contending that therefore there was no “issue as to the assault for determination by a court or jury”. The trial court agreed that at the prior City Court proceeding defendant “was afforded a full and fair opportunity to litigate the very issue raised upon this motion * * * viz, did defendant lay violent hands upon plaintiff” and, noting the City Court Judge’s finding that defendant used “physical force against” the plaintiff, concluded that defendant’s liability is “no longer disputable”. Accordingly the court granted the motion for summary judgment against the defendant on the issue of liability and ordered the matter to proceed on the issue of damages alone.
The Appellate Division affirmed in a memorandum in which it concluded that all the requirements necessary to invoke the doctrine of collateral estoppel had been met in this case. Specifically the court found that the factual issue necessarily decided in the harassment action was identical and decisive of the present action. The court also stated that the defendant had a full and fair opportunity to contest the accusation of harassment at his trial in the City Court. One Justice dissented primarily on the ground that the defendant had been deprived of his right to a jury trial *291 which, although not available to him on the harassment charge, was constitutionally and statutorily guaranteed to him in the civil action for money damages.
The doctrine of collateral estoppel is based on the notion that it is not fair to permit a party to relitigate an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point (see, e.g., Schwartz v Public Administrator of County of Bronx, 24 NY2d 65, 69; People v Lo Cicero, 14 NY2d 374, 380; People v Berkowitz, 50 NY2d 333, 344). Properly utilized it also serves to conserve the resources of courts and litigants. Because the doctrine is based on general notions of fairness there are few immutable rules.
Due process, of course, would not permit a litigant to be bound by an adverse determination made in a prior proceeding to which he was not a party or in privity with a party (Postal Tel. Cable Co. v Newport, 247 US 464; Provident Bank v Patterson, 390 US 102). Until recently the prior determination generally could not even be used against a party to the prior suit unless his current opponent had also been a party who would have been mutually bound by the determination had it been unfavorable to him (see Siegel, New York Practice, § 460). In 1967, however, we held that mutuality of estoppel “is a dead letter” in this State (B. R. De Witt, Inc. v Hall, 19 NY2d 141, 147) and subsequently in Schwartz v Public Administrator of County of Bronx (24 NY2d 65, 71, supra) indicated that “New York law has now reached the point where there are but two necessary requirements for the invocation of the doctrine of collateral estoppel. There must be an identity of issue which has necessarily been decided in the prior action and is decisive of the present action, and, second, there must have been a full and fair opportunity to contest the decision now said to be controlling” (but, also, see People v Berkowitz, supra, preserving the mutuality concept in criminal cases). The rejection of the mutuality principle in civil actions also undermined the rule, which had long prevailed in this State, that a conviction in a criminal case could not be given conclusive effect in a subsequent civil suit (Schindler v Royal Ins. Co., 258 NY 310). That rule was abandoned *292 in 1973 (S. T. Grand, Inc., v City of New York, 32 NY2d 300).
These developments were not merely a remodeling of a rigid mechanism with fewer parts. In the Schwartz case and subsequent decisions it was emphasized that historically and necessarily collateral estoppel is a flexible doctrine which can never be rigidly or mechanically applied (Schwartz v Public Administrator of County of Bronx, supra, at p 73; People v Berkowitz, 50 NY2d 333, 344, supra; People v Plevy, 52 NY2d 58). The question as to whether a party has had a full and fair opportunity to contest a prior determination cannot be reduced to a formula. It cannot, for instance, be resolved by a finding that the party against whom the determination is asserted was accorded due process in the prior proceeding (People v Plevy, 52 NY2d 58, 65, supra). The point of the inquiry, of course, is not to decide whether the prior determination should be vacated but to decide whether it should be given conclusive effect beyond the case in which it was made (see, e.g., Restatement, Judgments 2d [Tent Draft No. 3], § 88, Comment i).
Thus we noted in the Schwartz case (at p 72) that when collateral estoppel is in issue, the question as to whether a party had a full and fair opportunity to litigate a prior determination, involves a practical inquiry into “the realities of litigation. A comprehensive list of the various factors which should enter into a determination whether a party has had his day in court would include such considerations as the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation” (see, also, Restatement, Judgments 2d [Tent Draft No. 3], § 88). A consideration of those factors in this case leads to the conclusion that,the City Court harassment conviction should not be given conclusive effect in the civil action for damages.
The City Court action was a relatively minor one. Although nominally a criminal trial, the defendant was not *293 actually charged with committing a crime, which by definition includes only felonies and misdemeanors (Penal Law, § 10.00, subd 6). As the drafters of the Penal Law noted, petty infractions below the grade of a misdemeanor are, like traffic violations, more accurately described as “noncriminal offenses” (see Gilbert’s Criminal Law and Procedure [1970 ed], Commission Staff Notes on Proposed Penal Law, § 15.00, p 2-190). By statute collateral estoppel effect is denied to traffic convictions (Vehicle and Traffic Law, § 155) and determinations in small claims actions (see section 1808 of the Uniform City Court Act, Uniform Justice Court Act and New York City Civil Court Act). Even in the absence of statute, however, these minor suits are illustrative of the type of determination which, under accepted common-law principles, should not be held conclusive in later cases (see, e.g., Restatement, Judgments 2d [Tent Draft No. 4], § 68.1, subd [c], and Comment d).
Because of the relative insignificance of the charge, the defendant had no constitutional or statutory right to a jury trial, as he would have in a true criminal prosecution (Duncan v Louisiana, 391 US 145; Baldwin v New York, 399 US 66; CPL 340.40; CPL 260.10; see, also, Practice Commentary to CPL 340.40, McKinney’s Cons Laws of NY, Book 11A), or even in the subsequently initiated civil action for damages (CPLR 4101, subd 1; see, also, NY Const, art I, § 2). Nor could he reasonably expect or be expected to defend with the same vigor. The brisk, often informal, way in which these matters must be tried, as well as the relative insignificance of the outcome, afford the party neither opportunity nor incentive to litigate thoroughly or as thoroughly as he might if more were at stake.
Of course the defendant did not choose to litigate the matter first in the City Court. It was the plaintiff who had the initiative. Nor is there any suggestion that the defendant or the City Court Judge were aware of the possibility that a conviction on the petty criminal charge might later be used to conclusively establish liability in a quarter million dollar damage suit. As noted that action was not initiated until the day following the conviction. Consistent with the apparent minor nature of the charge, and the general *294 practice in the local criminal courts, the non jury trial was brief, consuming but part of an afternoon, followed immediately by verdict, allocution and sentence. In short the defendant was not afforded the same opportunity to litigate his liability in the City Court as he would in the Supreme Court. Thus it. is not unfair to permit hfm one opportunity to fully defend the civil complaint on the merits in a manner consistent with the potential magnitude of the suit.
A contrary ruling, granting collateral estoppel effect to convictions in this type of case would not reduce the amount of litigation in the long run. It would, of course, provide an incentive to potential plaintiffs to file a minor criminal charge before commencing a civil action. If the defendant is convicted the prosecution will have also won the plaintiff’s civil action, without the expense of a civil trial and, more important, without the plaintiff having to convince a jury of the merits of his action. If, on the other hand, the defendant is acquitted, the plaintiff’s civil action would not be jeopardized because he could not be bound by the acquittal for the reason, among others, that he was not a party to the criminal trial. Of course a defendant alerted to the potential impact in future cases would be compelled to defend the violation charge with a vigor out of all proportion to its otherwise petty nature, and at variance with the proper function of the local criminal courts, to provide expeditious disposition of minor cases. As one commentator has noted in a similar context: “In the end this could frustrate the very purpose of res judicata to reduce contention and dispute. Instead of more litigation later, there' will be more litigation now” (Rosenberg, Collateral Estoppel in New York, 44 St Johns L Rev 165, 177).
Accordingly, the order of the Appellate Division should be reversed and the motion for summary judgment denied. The certified question should be answered in the negative.

 Defendant was charged with violating subdivision 1 of section 240.25 of the Penal Law, which states “A person is guilty of harassment when, with intent to harass, annoy or alarm another person: 1. He strikes, shoves, kicks or otherwise subjects him to physical contact, or attempts or threatens to do the same * * * Harassment is a violation.”