**Lazar LEVITIN, Plaintiff,**

v.

**Norman L. ROSENTHAL and Marshall W. Rosenthal, Defendants.**

**Civ.A. No. CV–89–3936 (DGT).**

United States District Court, E.D. New York.

Oct. 24, 1995.

**402**

Lazar Levitin, New York City, Pro Se.

Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, Livingston, NJ, for Defendants.

*MEMORANDUM AND ORDER*

TRAGER, District Judge.

This case raises what appears to be the novel question of whether one is collaterally estopped from raising an issue which presumably need not have been addressed in an inquest proceeding, but, in this instance, was actually litigated. The question arises in the following context.

**Background**

The plaintiff, Lazar Levitin, brought this legal malpractice action in 1989 based on the defendants', Norman and Marshall Rosenthal, representation of Levitin in an action which was brought in 1984 based on events occurring in 1980. *Hans Homburger v. Lazar Levitin, et. al.,* No. 84–5847, Order and Judgment (Sup.Ct., Kings Cty. Sept. 5, 1986), *aff'd,* 130 A.D.2d 715, 515 N.Y.S.2d 825 (2d Dep't.1987), *app. dismissed,* 70 N.Y.2d 795, 522 N.Y.S.2d 112, 516 N.E.2d 1225 (1987). Consequently, the facts in this case are complicated by the multitude of proceedings that have occurred over this fifteen year time span.

In 1980, Levitin entered into a limited partnership with Homburger called Ocean Parkway Medical Building (OPMB). The partnership leased the OPMB with the intent to renovate the building and sub-lease to medical-related tenants. After the renovations were completed, however, OPMB sued its architect, Ronald Goodman, for faulty design. OPMB settled the case for $300,000, and after its attorneys deducted their portion, OPMB eventually collected $228,000. *Homburger v. Levitin, supra.*

Then, in 1984, Homburger sued Levitin and OPMB in state court for an accounting of the recovery obtained in the *Goodman* case. In this lawsuit, Levitin was represented by Norman Rosenthal and allegedly by Marshall Rosenthal, until they withdrew in August 1986. Pl's Amend.Complt. ¶¶ 5–6. On September 11, 1986, Justice Gerald Held granted a default judgment to Homburger because Levitin refused to produce outstanding documents requested by a notice of discovery and inspection in July 1984. Justice Held's default was affirmed on appeal, *Homburger v. Levitin, supra.*

Thereafter, in November 1986, following an extensive hearing, discussed below, a judgment was entered against Levitin for twenty-one percent of the amount recovered from Goodman, which percentage was exactly the share of the partnership that Homburger claimed was his. In addition, the judgment included an additional sum of $20,000 which the court found Levitin fraudulently induced Homburger to further invest, together with interest from the date of the commencement of the lawsuit.

In 1989, Levitin brought this attorney malpractice action. He claimed that the default judgment was the result of the negligence of his attorneys', Norman and Marshall Rosenthal. Amend.Complt. ¶ 8. Later that year,

defendants brought a summary judgment motion, and plaintiff responded with his own summary judgment motion. The case was originally assigned to Judge Raggi who referred the summary judgment motions to Magistrate Judge Chrein. Magistrate Judge Chrein issued a Report and Recommendation in July 1991 and recommended that both motions be denied. In September 1991, Judge Raggi adopted this report. In defendants' first motion for summary judgment, they argued that even if they negligently failed to produce certain documents in the *Homburger* case, the court still would have issued a default judgment. Thus, since the outcome would remain the same, the case should be dismissed. Magistrate Judge Chrein ruled that triable issues of fact as to whether the Rosenthals' negligence was the proximate cause for the entry of the default judgment existed and thus denied the motion. Report and Rec., July 2, 1991.

Now, the Rosenthals have moved for summary judgment again claiming that even if they were negligent *and* their negligence was the proximate cause of the default judgment, Levitin still would have lost the case because he had converted funds. Levitin responded that he had an affirmative defense to the state action which he did not have an opportunity to present because of the presumed negligence of the defendants. His affirmative defense was that Homburger was no longer a partner when the *Goodman* recovery was received[1] and, therefore, even if Levitin converted the funds, Homburger had no right to these funds. Levitin claims that he should, consequently, now be given the opportunity to establish this affirmative defense which he was prevented from doing because of the defendants' legal malpractice. The Rosenthals reply that Levitin's affirmative defense is without merit and, in any event, he is precluded from raising it. In answer to defendants' preclusion argument, plaintiff claims that summary judgment is not appropriate because he did not have a full and fair opportunity in the inquest to establish his affirmative defense and because

the facts underlying the defense were never decided by the trial court.

However, because of the extensive fact-finding of the prior proceeding, this court concludes that the plaintiff had a full and fair opportunity to raise his affirmative defense at the inquest, and this defense—even if it was not necessary to Justice Held's decision—was, in fact, actually decided against Levitin at that hearing. Alternatively, the state court justice, who would have been the trier of fact in this equitable action, made it abundantly clear that he found no merit in plaintiff's affirmative defense. Consequently, this affirmative defense should be precluded, and, accordingly, the defendants' renewed motion for summary judgment should be granted because even if the defendants' attorneys were negligent, their negligence was not the "but for" cause of plaintiff's damages.

## Discussion

### (1)

■ Federal courts must give the same preclusive effect to state court judgments as would be given by the courts of the judgment-rendering state. *See Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Because the issue now argued to be precluded arose from a New York state court decision, New York's collateral estoppel rules apply.

■ The doctrine of collateral estoppel precludes a party from re-litigating "an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point." *Gilberg v. Barbieri*, 53 N.Y.2d 285, 441 N.Y.S.2d 49, 50, 423 N.E.2d 807, 808 (1981). In order to preclude an issue two requirements must be met. First, the identical issue necessarily must have been decided in the prior action, and second, the party to be precluded from re-litigating the issue must have had a full and fair opportunity to contest the prior determination. *Kaufman v. Eli Lilly and Co.*, 65 N.Y.2d 449, 492 N.Y.S.2d 584, 588, 482

---

1. Levitin makes further allegations that Homburger received cash payments from him which resulted in Homburger's tax fraud; however, these allegations will not be addressed here. For even if these allegations are true, they only impact upon the credibility of the parties and not the legal issues to be decided here.

N.E.2d 63, 67 (1985); *Gilberg*, 441 N.Y.S.2d at 50, 423 N.E.2d at 808.

■ The party seeking the benefit of collateral estoppel, here, the defendants, the Rosenthals, must prove the identity of the issues in the present litigation with the past action. Then, to refute the presumption of estoppel, the opposing party, here, the plaintiff, Levitin, must demonstrate the absence of a full and fair opportunity to litigate the issue in the prior action. *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 478 N.Y.S.2d 823, 827, 467 N.E.2d 487, 501 (1984); *Schwartz v. Public Administrator*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 962, 246 N.E.2d 725, 732 (1969). Accordingly, this Court must now determine whether the issue of the buy-out is precluded.

### (2)

■ Turning first to the issue whether Levitin had a full and fair opportunity to litigate the buy-out defense, Levitin argues that the judgment against him resulted from defendants' malpractice, and he was unable to raise his affirmative defense in the inquest, which was conducted solely, he claims, to determine the amount of money owed to Homburger. In making this argument, Levitin ignores the fact that matters regarding his defense—who owned what percentage of the partnership—became important issues in the hearing. In this instance, although generally an inquest is a limited proceeding, and despite the Appellate Division's affirmation of the default, Justice Held proceeded to conduct an open-ended [2] fact finding proceeding often directing the parties to address the factual issues related to the partnership and the relationship between Homburger and Levitin.

In fact, at the inquest as early as the attorneys' opening statements, recognized it was the trier of fact. It then held an in-depth hearing to determine not only the amount of damages, but implicitly whether Homburger had an interest in the partnership and, if so, how much of an interest.

During Homburger's counsel's, Wolfe's, opening statement, Justice Held interjected:

> So, therefore if I should decide that there was conversion to any extent then you [Wolfe] would receive ... your share of the monies that should go to your client [Mr. Homburger] ... (Tr. at 57.)

Shortly afterwards, Levitin's attorney, Podolsky, in his opening, argued:

> [I]t is our view that you will be satisfied at the end of the hearing that there was no profit, and, hence, the percentage, *if any*, of Homburger is zero ... (Tr. at 60.) (Emphasis added.)

The court immediately interrupted counsel and inquired: "His percentage is zero or the profits were zero?" To this question, Podolsky replied: "We are confident you will be satisfied there was no profit ..." *Id.* Although Podolsky's answer indicates that he would be arguing that there was no profit, as evident from the transcript, nothing said by the court precluded him from making the argument that not only were there no profits but that Homburger had no interest in the partnership.

Later on, during cross-examination of Homburger, Wolfe, Homburger's attorney, objected to Podolsky's line of questions believing that they "go to the matters that were raised in the answer [the affirmative defense] which was stricken. He is back to litigating the case ... I don't see where this goes to damages." Justice Held responded: "I disagree ... I think it conceivably can be an item of damage or not an item of damage, and I have to find out whether it is." Tr. at 210. Although the court might well have taken the position that not only was the conversion established by the default, but also the amount of Homburger's interest was determined by the default, it chose not to do

---

**2.** Indeed, Justice Held explicitly determined that Levitin converted funds for his own use, even though this latter issue was certainly necessarily decided by the default. "I find that he did convert the assets of the general partnership; that he used the monies of the partnership as his own personal account ... and that the total converted was, in fact, $314,500 which belonged to the general partnership and belonged in its coffers." Tr. at 1360–1. Thus, even had there been no default, there can now be no factual dispute that Levitin is liable for an accounting for having converted the partnership's money.

so. Instead, the court followed what seems to be analytically the sounder approach by recognizing that the percentage interest Homburger had in the partnership directly impacted upon the award Homburger was entitled to receive.

The hearing was extensive lasting over a sixteen day period. The transcript is over 1,360 pages in length. The type of partnership Homburger and Levitin had as well as the amounts contributed were detailed, including many discussions of or allusions to a buy-out. *See* Tr. at 66–68; 199–217; 430–438; 458–468; 480–498; 584–594; 629–635; 800–802. Hans Homburger testified that he was a general partner in OPMB since September 1986. Tr. at 62–63. A limited partnership agreement signed in 1980 was introduced as evidence by Homburger detailing his investment in OPMB. It is undisputed that his initial investment was $35,000. And thereafter he lent $55,000 to the partnership of which $5,000 was repaid. Tr. at 63–70. Levitin's attorney claimed that the $55,000 was actually an investment in the partnership. Tr. at 205. And, on cross-examination, Levitin's attorney asked Homburger about many aspects of the partnership, including questions relating to the income tax returns of the partnership and both Homburger's investment/loans into the partnership and his demands for payments from the partnership. Tr. at 206–12.

Justice Held gave so much latitude to Levitin that on his direct Levitin was permitted explicitly to testify about the alleged buy-out. Tr. at 480–494; 584–594. In fact, it went so far, that at one point, he was asked by the court the following question:

Well, Homburger demanded $5,000, as you put it, to get out of the partnership and you, in fact, gave him the $5,000 ... Why isn't he out of the partnership? (Tr. at 584.)

Levitin evaded answering the question. So, Justice Held asked again:

[D]o you have any evidence of the reason why you paid him the $5,000? Homburger testified that it was a partial repayment of his $55,000 loan, for which there is a $50,-000 balance. You say it was to buy him

out of the limited, his position as a limited partner, is that right? (Tr. at 585.)

This time, Levitin responded:

There is no answer yes or no.... [B]y that time, when he got the $5,000 he already exchanged $30,000 for cash. He already got more than $5,000 in my promissory note which he had been advised many times by me I will honor them any time because it is my promissory note. (Tr. at 586.)

During further discussion of the partnership, Justice Held emphasized his desire for a complete court record by requesting Levitin to introduce all documents that supported his case:

[T]he Court would be pleased to look at and accept as evidence anything which is, meets the test of evidence [sic] ... (Tr. at 610.)

At the end of the trial, Justice Held rejected plaintiff's testimony in its entirety and found for Homburger for the percentage claimed.

■ In determining whether a party has fully and fairly litigated, various factors must be considered: "the size of the claim, the forum of the prior litigation, the use of initiative, the extent of the litigation, the competence and experience of counsel, the availability of new evidence, indications of a compromise verdict, differences in the applicable law and foreseeability of future litigation." *Schwartz v. Public Administrator of Bronx County*, 24 N.Y.2d 65, 298 N.Y.S.2d 955, 961, 246 N.E.2d 725, 731 (1969); *see also Gerney v. Tishman Construction Corp. of N.Y.*, 136 Misc.2d 1051, 518 N.Y.S.2d 564 (Sup.Ct., N.Y.Cty.1987).

Here, Levitin was a full participant in the earlier trial, even having the opportunity to litigate issues that the court might easily have said were not at issue in light of his default. *See, e.g.*, Tr. at 382, 610, 680. The action involved the not insignificant sum of more than $300,000. Certainly, this is a substantial sum for which one would expect a vigorous defense—which a 1,367 page transcript attests was in fact mounted.

Levitin argues that the attorney he chose to represent him at the default hearing,

which he characterizes as only a limited inquest, would not have been the attorney he would have chosen for a trial. It does not take an attorney "experienced in business litigation," Pl.'s Reply to Supp. Letter Br., Point V, as opposed to "a sole practitioner," to raise the simple defense that a partnership relationship no longer existed at the time in question. Justice Held asked Levitin if he had any defenses. Tr. at 382, 840. Levitin does not claim—and could not credibly—that he wanted to raise the defense but his attorney refused. Thus, counsel was both available and adequate. In addition, there is no showing or claim of any prejudice and no new evidence, which could not be brought earlier, has appeared.

While the plaintiff contends that Homburger lied on the stand when he denied receiving cash from plaintiff and that this was not addressed during the inquest because it was irrelevant to the issue of damages, Pl.'s Response to Supp. Letter Br. at Point II, the court during the inquest, as noted above, did not take a limited view of what was relevant on the issue of damages and made assessments of the credibility of both Homburger and Levitin. *See* Tr. at 66–68; 199–217; 430–438; 458–468; 480–498; 584–594; 629–635. Although uncertainties remain about the "real" relationship between Homburger and Levitin and OPMB, these matters were addressed during the inquest. The court rejected plaintiff's testimony in its totality and, in its award, accepted Homburger's testimony as to his interest in the partnership. The issue of whether there had been a buyout was thus, rightfully, fully and fairly litigated. Consequently, plaintiff is precluded from relitigating this issue in this action.

(3)

■ The defendants have met the burden of establishing that the identical issue, the alleged buy-out of Homburger's interest by Levitin, was necessarily decided. According to Professor David Siegel: "Where a judgment of a particular kind can be accounted for legally only by the existence of a certain combination of findings, each of those findings will be deemed established by the judgment." Siegel, *New York Practice* § 464 (West 1991). It must be recognized that

default judgments also necessarily decide issues. Homburger specifically requested an accounting because, as he alleged, he was a partner in OPMB and did not receive any benefits from the *Goodman* settlement. Indeed, it was only if he was a partner that Homburger was entitled to an accounting.

But argues the plaintiff, this finding was established only because of defendants' malpractice and, therefore, the finding must be disregarded. While analytically this is technically correct, it ignores two important points.

First, in determining what damages to award Homburger, Justice Held sought to determine what percentage, if any, Homburger had in the partnership and it appears that he viewed this issue as a necessary predicate to determining Homburger's damages. Indeed, Justice Held heard hours of testimony from both Levitin and Homburger on their payments and agreements to each other. In his decision awarding Homburger damages, Justice Held accepted Homburger's claim that he owned and was entitled to twenty-one percent of the partnership equity.

■ Second, even if somehow it is deemed that the issue was not necessarily decided by Justice Held's damage determination and plaintiff is, therefore, not bound by this finding, *see* Seigel, *New York Practice, supra* at § 465 ("even an issue actually litigated may be denied the estoppel if it was not necessary to the judgment), it would under the circumstances be a waste of judicial resources and a source of possible embarrassment to retry this question in this court. An accounting is an action in equity to be tried by the court without a jury, *See* 1 N.Y.Jur.2d 181–83 (Lawyers Co–Op.Pub. 1979) ("The jurisdiction of courts of equity to state and settle accounts, or to compel an accounting, is exercised ... where[ ] fraud is charged"), *Fedoryszyn v. Weiss,* 62 Misc.2d 889, 892–93, 310 N.Y.S.2d 55 (Nassau Cty. 1970) (discussing accounting as a specific remedy in a conversion suit); *In re James' Estate,* 173 Misc. 1042, 1044–45, 19 N.Y.S.2d 532 (N.Y.Cty. 1940) (accountings are equity suits handled by the court in order to create a more effectual and speedier remedy). Jus-

tice Held found the plaintiff to be a completely unreliable witness:

> I find that the testimony of Levitin was rampant with contrivance and connivance. I find that it was a devious and contorted testimony that was manufactured and tailored on the spot. . . . I find him to be totally unworthy of belief. (Tr. 1360–1.)

In light of this unequivocal finding of plaintiff's lack of credibility, it is evident that had there been no default, the state trial judge would have found no merit to the affirmative defense, and Levitin would have lost.

It would also be an enormous embarrassment to the judicial system for a jury in a federal court to conclude otherwise. *See Schwartz*, 298 N.Y.S.2d at 962, 246 N.E.2d at 732 (one of collateral estoppel's purposes is to "reduce the number of inconsistent results which are always a blemish on a judicial system.") In any case, the jury would be entitled to know of Justice Held's opinion of the plaintiff's credibility since it would be relevant on the issue of proximate cause—i.e. whether plaintiff here had a viable defense. Moreover, plaintiff has offered nothing to indicate that Justice Held's credibility finding was unwarranted. Other than the interested testimony of his wife, who was previously present during some of his conversations with Homburger, too, he still offers no credible evidence to support his claim of a buyout. He would not have been successful even if there had been no default.

### (4)

In sum, because of both the law and the unique facts of this case, the affirmative defense of an alleged buy-out was actually decided against Levitin in the earlier state court action and that determination was a necessary one for the court to make in deciding Homburger's damages. In any case, the record is clear that the state court would have found no merit in Levitin's claim of an alleged buy-out.

 The preclusive effect of Justice Held's adverse finding on the question whether there had been a buy-out directly impacts on plaintiff's attorney malpractice claim. It is well settled that to prove attorney malpractice, plaintiff has the burden of proving that: an attorney-client relationship existed; the attorney was negligent; the attorneys' negligence was the proximate cause of the plaintiff's damages; and, directly because of the attorneys' actions, plaintiff suffered actual damages. *Hanlin v. Mitchelson*, 794 F.2d 834, 838 (2d Cir.1986); *Plentino Realty, Ltd. v. Gitomer*, —— A.D.2d ——, 628 N.Y.S.2d 75, 76 (1st Dep't.1995); *Marshall v. Nacht*, 172 A.D.2d 727, 569 N.Y.S.2d 113 (2d Dep't.1991); *O'Brien v. Spuck*, 99 A.D.2d 910, 472 N.Y.S.2d 514 (3d Dep't.1984). The defendants, Rosenthals, in this summary judgment motion, have accepted for the sake of argument the first two elements as true and maintain that there is no factual issue in dispute regarding the third element of the test. The Court agrees. The third element of the attorney-malpractice test is a "but for" requirement—but for the attorney's negligence, the plaintiff would not have suffered the damages alleged. *Geraci v. Bauman, Greene & Kunkis, P.C.*, 171 A.D.2d 454, 567 N.Y.S.2d 36, 37 (1st Dep't.1991) ("In an action for legal malpractice, a plaintiff is required to prove that 'but for' the negligence of his attorney, he could have recovered damages in the underlying action."). Because Levitin's affirmative defense was in fact decided against him after a full and fair opportunity to raise this defense—that Homburger had no interest in the partnership—he has no defense to his conversion of the partnership funds. Thus, even if the Rosenthals were guilty of attorney malpractice, Levitin still would be liable for an accounting. Levitin, therefore, suffered no damages as a result of the defendants' alleged malpractice. Accordingly, the requirements for a malpractice claim cannot be met, and the summary judgment motion should be granted.[3]

### Conclusion

Because the plaintiff's affirmative defense was fully and fairly litigated and the result was adverse to him, he cannot meet the "but

---

**3.** As noted above, contrary to what the plaintiff contends, this summary judgment motion is not the same as the earlier motion which did not assume that the defendants' proximately caused plaintiff's harm.

for" element of the attorney malpractice requirements. Therefore, the defendants' motion for summary judgment is granted. The Clerk of the Court shall issue a judgment dismissing the complaint.

SO ORDERED: