88 F.3d 56
 John GIAKOUMELOS, Plaintiff-Appellant,
v.
Thomas A. COUGHLIN, III, Stephan Vladyka, Correction Officer
at Great Meadow Correctional Facility, Arthur Leonardo,
Superintendent, and Donald Selsky, Director of Special
Housing, Defendants-Appellees.
 No. 1214, Docket 95-2211.
 United States Court of Appeals,
Second Circuit.
 Argued March 19, 1996.
Decided June 20, 1996.
 
 Stephen M. Latimer, Hackensack, NJ (Loughlin & Latimer, of Counsel), for Plaintiff-Appellant.
 Denise A. Hartman, Albany, NY, Assistant Attorney General of the State of New York (Dennis C. Vacco, Attorney General of the State of New York, Peter H. Schiff, Deputy Solicitor General, Peter G. Crary, Assistant Attorney General, of Counsel), for Defendants-Appellees.
 Before FEINBERG, CARDAMONE and MAHONEY, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 Plaintiff John Giakoumelos is a prisoner in the custody of the New York State Department of Correctional Services (DOCS). Defendants are various DOCS officials, including those involved in the disciplinary proceedings against Giakoumelos that form the basis of this appeal. Giakoumelos appeals from a judgment filed in the United States District Court for the Northern District of New York in March 1995, in accordance with a decision by Magistrate Judge Ralph W. Smith, Jr., granting summary judgment for defendants in Giakoumelos's civil rights action. The district court ruled that because Giakoumelos had previously litigated the constitutionality of the disciplinary proceedings in New York state court, he could not do so again. For the reasons stated below, we affirm.
 
 I. Background
 
 2
 During 1991 Giakoumelos was a prisoner at Auburn Correctional Facility (Auburn). In November 1991, he was transferred from Auburn to Green Meadow Correctional Facility (Green Meadow) because prison officials believed that he was involved in a plot to escape with two other prisoners from Auburn (the escape). At Green Meadow, Giakoumelos was issued an Inmate Misbehavior Report by Michael Urban, the DOCS official investigating the escape, charging him with conspiring to escape in violation of DOCS Rule 108.10. See 7 N.Y.Comp.Codes R. & Regs. § 270.2.
 
 
 3
 A disciplinary hearing was conducted at Green Meadow in December 1991 (the hearing) and was presided over by defendant Stephan Vladyka. Giakoumelos was found guilty, primarily on Urban's testimony, taken by telephone outside Giakoumelos's presence, regarding the results of his investigation and statements made by a confidential informant. Giakoumelos was sentenced to 365 days confinement in the Special Housing Unit (SHU) at Green Meadow; loss of package, commissary and phone home privileges for the same period; and loss of 12 months good time. This decision was affirmed in two subsequent administrative appeals (together with the hearing, "the disciplinary proceedings").
 
 
 4
 Giakoumelos made a number of requests both prior to and during the hearing. He requested (1) the use of a Greek translator; (2) access to the evidence to be presented against him, including a copy of an Unusual Incident Report (UIR) that he believed was filed in connection with the investigation; (3) the names of the alleged co-conspirators in order to call them as witnesses on his behalf; (4) permission to ask Urban questions about the investigation; and (5) an independent assessment by Vladyka of the informant's credibility. Each of these requests was denied.
 
 
 5
 Acting pro se, Giakoumelos brought a timely action in New York State Supreme Court pursuant to Article 78 of the New York Civil Practice Law and Rules (CPLR) seeking to reverse the decision of the disciplinary proceedings (the Article 78 Proceeding). He claimed that the hearing was not fair and impartial because he was not provided with a Greek translator and because Vladyka had investigated the escape in connection with a concurrent administrative segregation hearing at Green Meadow that was later discontinued. In addition, Giakoumelos claimed that for various reasons he was unable to present an adequate defense. First, he was denied access to evidence presented against him, including the UIR, photographs used by the confidential informant to identify Giakoumelos (the photo array), photographs of a "confiscated cloth" that may have figured in the escape, and a summary of Urban's confidential testimony at the hearing. Second, he was not allowed to ask Urban questions. Third, he was denied the right to call witnesses on his behalf because Vladyka refused to divulge the names of the co-conspirators. Finally, Giakoumelos claimed that Vladyka should have assessed the credibility of the informant. These actions were alleged to be in violation of the United States Constitution, the New York Constitution, and various provisions of the New York Civil Rights Law and New York prison regulations.
 
 
 6
 The case was transferred to the Appellate Division, Third Department pursuant to CPLR § 7804(g) because the complaint raised the issue of whether the determination in the disciplinary proceedings was supported by substantial evidence. In April 1993, the Appellate Division confirmed the determination. See Matter of Giakoumelos v. Coughlin, 192 A.D.2d 998, 597 N.Y.S.2d 232 (3d Dep't 1993). The court found that Giakoumelos had waived any argument that Vladyka was biased because he had not made such an objection at the hearing. Id. at 998, 597 N.Y.S.2d 232. In any event, Vladyka was not biased because his interview of Giakoumelos in connection with the administrative segregation hearing did not constitute an "investigation" of the escape. Id. With respect to access to evidence, the court found that (1) there was no evidence that a UIR was ever filed, (2) the photographs of the "confiscated cloth" were not relied upon in the hearing and Giakoumelos had not shown that they would have been significant to his defense, and (3) with a transcript of Urban's telephone testimony submitted in camera before it (the Urban transcript), the denial of access to the photo array was "rationally based upon security reasons." Id. at 998-99, 597 N.Y.S.2d 232. In light of the Urban transcript, the court also found that there was a "rational basis" for Vladyka's determination that the co-conspirators could not be called as witnesses and that Vladyka had "sufficiently detailed and specific" information before him to independently assess the reliability of the informant. Id. at 999, 597 N.Y.S.2d 232. Finally, the court rejected all of Giakoumelos's remaining contentions. Id. In October 1993, the New York Court of Appeals denied leave to appeal. 82 N.Y.2d 658, 604 N.Y.S.2d 557, 624 N.E.2d 695 (1993).
 
 
 7
 Again acting pro se, Giakoumelos brought this action for damages in January 1994 in the district court pursuant to 42 U.S.C. § 1983. The complaint alleged that defendants had deprived him of due process by (1) using a biased hearing officer, (2) denying him the right to call witnesses as a result of Vladyka's refusal to interview the alleged co-conspirators and the informant, and (3) denying him the right to adequately defend himself by refusing to produce the UIR, the photo array and the photos of the "confiscated cloth".
 
 
 8
 After the parties consented to proceed for all purposes before Magistrate Judge Smith, a somewhat convoluted chain of events occurred. Defendants moved for summary judgment on the ground that collateral estoppel applied because the claims raised in the complaint had already been decided against Giakoumelos in the Article 78 Proceeding. In June 1994, the Magistrate granted the motion because Giakoumelos had not filed any opposition to it.
 
 
 9
 Giakoumelos then moved for relief under Fed.R.Civ.P. 60(b) on the ground that before the deadline to respond to the summary judgment motion, he had been granted an extension of time to answer by a staff attorney in the district court. The Magistrate, who was apparently not aware of this extension when he granted the motion, vacated his June 1994 decision and ordered Giakoumelos to answer.
 
 
 10
 Along with his opposition to the summary judgment motion, Giakoumelos offered an affidavit by a prisoner at Auburn named Mark Braun. That affidavit recounted Braun's interview with Urban during the latter's investigation of the escape. In September 1994, the Magistrate denied defendants' motion for summary judgement because Braun's affidavit showed that Giakoumelos had "recently uncovered what appears to be significant new evidence" (specifically that Braun was possibly one of the co-conspirators) in support of Giakoumelos's claims and such evidence defeated the application of collateral estoppel.
 
 
 11
 The defendants then moved for reconsideration of the Magistrate's denial of summary judgment. They submitted an affirmation by Urban that Braun was not the informant or one of the co-conspirators and would have had no relevant evidence to offer at the hearing. They also submitted, in camera, the Urban transcript in order to show that Braun was not the informant and that the real informant was unwilling to testify because of safety concerns.
 
 
 12
 In March 1995, in light of the above submission by the defendants, the Magistrate vacated his September 1993 ruling and again granted defendants' motion for summary judgment. The Magistrate stated that "defendants have introduced evidence that clearly demonstrates that ... [Giakoumelos] has not in fact uncovered significant new evidence in support of his claims." This appeal, in which Giakoumelos is now represented by counsel, followed the entry of final judgment.II. Discussion
 
 
 13
 We review de novo a grant of summary judgment by the district court.
 
 A. Collateral Estoppel
 
 14
 Under the Full Faith and Credit Statute, 28 U.S.C. § 1738, federal courts must give a prior state court judgment the same preclusive effect that such a judgment would be given in the courts of the state from which the judgment emerged. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 466, 102 S.Ct. 1883, 1889-90, 72 L.Ed.2d 262 (1982). This rule applies to actions brought pursuant to 42 U.S.C. § 1983. See Allen v. McCurry, 449 U.S. 90, 103-04, 101 S.Ct. 411, 419-20, 66 L.Ed.2d 308 (1980) (issue preclusion); Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 84-85, 104 S.Ct. 892, 897-98, 79 L.Ed.2d 56 (1984) (claim preclusion). We therefore look to New York law to determine what preclusive effect the prior judgment in the Article 78 Proceeding has in this case.
 
 1. Requirements of New York Law
 
 15
 Under New York law, the doctrine of collateral estoppel, or issue preclusion, applies when a litigant in a prior proceeding asserts an issue of fact or law in a subsequent proceeding and (1) the issue "has necessarily been decided in the prior action and is decisive of the present action," and (2) there has been "a full and fair opportunity to contest the decision now said to be controlling." Schwartz v. Public Administrator, 24 N.Y.2d 65, 71, 298 N.Y.S.2d 955, 246 N.E.2d 725 (1969); see also Colon v. Coughlin, 58 F.3d 865, 869 (2d Cir.1995). Therefore, we must examine the Article 78 Proceeding closely to determine what was decided there.
 
 
 16
 With one exception, the claims Giakoumelos has raised in this § 1983 challenging the constitutionality of the disciplinary proceedings--the impartiality of the hearing officer, Vladyka's refusal to interview the confidential informant, the refusal to give Giakoumelos access to the UIR and the photographic evidence--were raised, decided and essential to the decision in the Article 78 Proceeding. See Ryan v. New York Tel. Co., 62 N.Y.2d 494, 500-01, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984) (issue precluded must have been essential to the judgment in the first action). In the Article 78 Proceeding, Giakoumelos did object to his inability to call the co-conspirators as witnesses, but he did not explicitly raise Vladyka's failure to interview the co-conspirators. However, for collateral estoppel purposes this claim is not different in any significant way from the claims that were raised. Giakoumelos's claim is essentially that he was denied access to the co-conspirators, either as witnesses for his defense or to rebut whatever evidence they may have offered against him. The access he sought was either in the form of taking testimony from the co-conspirators or having Vladyka assess their credibility. The Appellate Division determined that there were rational security reasons for denying Giakoumelos the ability to call the co-conspirators as witnesses.
 
 
 17
 Thus, the key question for us is whether there was a full and fair opportunity to litigate the claims in the prior proceeding. In order to prevent the application of collateral estoppel, Giakoumelos must establish the absence of such an opportunity in the Article 78 Proceeding. See Schwartz, 24 N.Y.2d at 73, 298 N.Y.S.2d 955, 246 N.E.2d 725 (burden of proof on the "full and fair opportunity" requirement rests with the party opposing collateral estoppel).
 
 
 18
 Giakoumelos has pointed to a number of procedural deficiencies in prison disciplinary hearings and prison administrative appeals in comparison to a full judicial adversary proceeding. Indeed, in the context of whether to accord prison disciplinary officials absolute immunity from suit both the Supreme Court and this court have recognized some of these shortcomings: the organizational pressure on prison hearing officers, see Cleavinger v. Saxner, 474 U.S. 193, 203-04, 106 S.Ct. 496, 501-02, 88 L.Ed.2d 507 (1985), Young v. Selsky, 41 F.3d 47, 53 (2d Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1837, 131 L.Ed.2d 756 (1995); the absence of counsel, the restrictions on cross-examination of witnesses, the reliance on hearsay and confidential informants, see Young, 41 F.3d at 53-54. Giakoumelos adds to this list the limited ability of prisoners to compel witnesses to testify and to otherwise review the evidence against them. Giakoumelos further argues that DOCS prison administrative appeals provide no additional procedural protections and rely on the same evidence as the disciplinary hearing. See Id. at 53. Moreover, Giakoumelos says, review of an administrative determination for substantial evidence under Article 78, given the low standard of review of factual determinations[1] and review limited to the administrative record, cannot rectify the procedural errors of the disciplinary proceedings.
 
 
 19
 This court stated in Colon, in passing, that "[w]e think there is a substantial question as to whether, under New York law, collateral estoppel should ever apply to fact issues determined in a prison disciplinary hearing and reviewed for substantial evidence in an Article 78 proceeding, given the procedural laxity of such prison hearings, and the limited nature of substantial-evidence review." 58 F.3d at 869 (quotation and citations omitted). But whatever may be the force of that language, which was not essential to the decision in that case, it affords Giakoumelos no comfort, for the issues raised in his § 1983 complaint are all issues of law, not of fact. And whatever preclusive effect an Article 78 proceeding may or may not be given where issues of fact are concerned, an issue that we need not decide today, we think it is clear that where issues of law are concerned, Giakoumelos cannot simply rely on the relatively limited procedural protections of prison disciplinary proceedings and Article 78 review. He must at least show that the alleged deficiencies in his disciplinary proceedings produced some significant effect on their review by the Appellate Division in the Article 78 Proceeding.
 
 
 20
 On the issue of the bias of the hearing officer, there appears to be no defect in the prison proceedings that should cast doubt on the state court determination of this issue because the Appellate Division had all of the pertinent, and undisputed, facts. On the issue of denial of access to witnesses, either through the withholding of the names of the co-conspirators and the informant, or through Vladyka's refusal to independently interview the informant, the Appellate Division reviewed the Urban transcript and was able to properly assess the prison officials' claim that institutional security required non-disclosure and that Vladyka had adequate information upon which to make the necessary credibility assessment. On the issue of denial of access to the evidence used against Giakoumelos, i.e. the UIR, the photo array and the photos of the confiscated cloth, the Appellate Division again had the relevant factual information--the evidence that Vladyka relied on and the basis of the prison's security concerns--in order to decide the issue.
 
 
 21
 All of these issues were questions of law to be decided on facts that do not appear to have been disputed. Giakoumelos has not shown that any procedural deficiency has kept him from presenting his case fully before the Appellate Division. See Brugman v. City of New York, 102 A.D.2d 413, 419, 477 N.Y.S.2d 636 (1st Dep't 1984), aff'd. mem. 64 N.Y.2d 1011, 489 N.Y.S.2d 54, 478 N.E.2d 195 (1985). Giakoumelos makes much of the fact that no evidence outside of the administrative record is normally considered in an Article 78 proceeding. However, he has not alleged that this deficiency worked to his disadvantage in any way, i.e. that he had any new evidence to offer at the time of his Article 78 action.[2] It cannot therefore be said that any alleged error in the disciplinary proceedings deprived Giakoumelos of a full and fair opportunity to litigate his constitutional concerns in the Appellate Division.
 
 
 22
 Were the district court to review the merits of all of Giakoumelos's claims it appears that it would have before it essentially the same record (including the Urban transcript) that the Appellate Division had before it. This is the situation--the relitigation of claims already decided under constitutionally adequate circumstances--that the Full Faith and Credit Statute seeks to avoid. See Allen, 449 U.S. at 94-96, 101 S.Ct. at 414-16. Giakoumelos chose to litigate his claims by way of an Article 78 proceeding. Collateral estoppel in a subsequent § 1983 action is one of the risks attendant to his decision to follow that route.
 
 
 23
 Under the circumstances here, the shortcomings of prison disciplinary proceedings did not affect Article 78 review to such an extent that collateral estoppel would be inapplicable. This does not mean that in every case those shortcomings would be irrelevant or would be corrected by what took place in the Appellate Division. New York courts have on numerous occasions stressed the importance of an analysis of each case's unique circumstances, rather than the rigid application of bright-line rules, in deciding the preclusive effect of a prior judgment. See Schwartz, 24 N.Y.2d at 73, 298 N.Y.S.2d 955, 246 N.E.2d 725 (collateral estoppel should not be applied "rigidly"); Ryan, 62 N.Y.2d at 501, 478 N.Y.S.2d 823, 467 N.E.2d 487 ("full and fair opportunity" analysis "requires consideration of the realities of the [prior] litigation" (quotation omitted)); Gilberg v. Barbieri, 53 N.Y.2d 285, 292, 441 N.Y.S.2d 49, 423 N.E.2d 807 (1981) ("full and fair opportunity" analysis "cannot be reduced to a formula"). This approach, one that we have followed here, is well-suited to achieve the goals of collateral estoppel without sacrificing a claimant's access to justice.
 
 
 24
 Giakoumelos argues that because monetary relief was not available in the Article 78 Proceeding he should not be precluded from relitigating the constitutionality of the disciplinary proceedings in federal court. Under New York law, if the initial forum did not have the power to grant the relief sought in the subsequent forum, res judicata, or claim preclusion, may not apply. See Davidson v. Capuano, 792 F.2d 275, 278 (2d Cir.1986). Although Giakoumelos therefore may not be estopped from bringing his claim for damages, the correct application of collateral estoppel requires that the issues raised in the subsequent action be decided by reference to the previous state court judgment. See Burgos v. Hopkins, 14 F.3d 787, 792-93 (2d Cir.1994). In other words, Giakoumelos's claim for damages must be rejected because the constitutionality of the disciplinary proceedings was already determined against him in the Article 78 Proceeding.
 
 2. Requirements of Federal Law
 
 25
 Even if a judgment satisfies New York State law requirements for issue preclusion, as a matter of federal law a state cannot give preclusive effect in its own courts to a constitutionally infirm judgment. See Kremer, 456 U.S. at 482, 102 S.Ct. at 1898. But "state proceedings need do no more than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause in order to qualify for the full faith and credit guaranteed by federal law." Id. at 481, 102 S.Ct. at 1897-98. The only serious issue raised by Giakoumelos's disciplinary proceedings in this regard is that the determination was apparently based primarily on confidential evidence.
 
 
 26
 A prison disciplinary finding must be supported by some evidence, Superintendent v. Hill, 472 U.S. 445, 455, 105 S.Ct. 2768, 2773-74, 86 L.Ed.2d 356 (1985), and an informant's testimony is enough at least as long as there has been "some examination of indicia relevant to [an informant's] credibility", as there apparently was here. Russell v. Scully, 15 F.3d 219, 223 (2d Cir.1993), as modified on denial of rehearing (1994).
 
 
 27
 It is true that in a criminal case, on facts similar to this, the government would probably be put to the choice of disclosure of an informant's testimony or dropping the case. See United States v. Saa, 859 F.2d 1067, 1073 (2d Cir.1988), cert. denied, 489 U.S. 1089, 109 S.Ct. 1555, 103 L.Ed.2d 858 (1989) (In a criminal trial "[t]he defendant is generally able to establish a right to disclosure [of an informant's identity and testimony] where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence." (quotation omitted)). But this is not a criminal case, and in the context of a prison disciplinary proceeding (on such a serious matter as a plot to escape) the prison officials need not be put to the same choice. The reason is obvious: the requirements of prison security are unique. See Wolff v. McDonnell, 418 U.S. 539, 561-62, 94 S.Ct. 2963, 2977-78, 41 L.Ed.2d 935 (1974).
 
 
 28
 We have held that in a civil contempt proceeding a court can rely upon evidence that it reviews in camera and withholds from the party against whom the evidence is offered when the interest in disclosure is outweighed by an important governmental interest in secrecy. See In re Grand Jury Subpoena, 72 F.3d 271, 276-77 (2d Cir.1995); see also Stoddard v. United States, 710 F.2d 21, 23-24 (2d Cir.1983); In re John Doe Corp., 675 F.2d 482, 489-90 (2d Cir.1982). We have reviewed the Urban transcript, and it shows that a substantial interest in the form of prison security is present in this case. We can find no due process impediment to affording collateral estoppel effect to the judgment in the Article 78 Proceeding.
 
 B. Due Process in Light of Sandin v. Conner
 
 29
 Independent of their argument for collateral estoppel, defendants argue that, in light of the recent Supreme Court opinion in Sandin v. Conner, --- U.S. ----, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), Giakoumelos has not made out a due process claim because he has no constitutionally-protected liberty interest in remaining free from disciplinary confinement. They argue that the 365 days Giakoumelos spent in the SHU and his loss of 12 months good time is not an "atypical and significant hardship ... in relation to the ordinary incidents of prison life." Id. at ----, 115 S.Ct. at 2300. This court has recently remanded cases decided by the district court prior to the decision in Sandin (as this case was) for a factual determination of whether the punishment received by the prisoner was an "atypical and significant hardship." See Branham v. Meachum, 77 F.3d 626 (2d Cir.1996); Samuels v. Mockry, 77 F.3d 34 (2d Cir.1996). Giakoumelos has called to our attention, among other things, a recent decision from the Eleventh Circuit that may throw doubt on defendants' argument. See Williams v. Fountain, 77 F.3d 372, 374 n. 3 (11th Cir.1996). Given our disposition of this case on grounds of collateral estoppel, however, we see no need to address the question of the effect of Sandin on Giakoumelos's claims.
 
 C. Summary Judgment
 
 30
 The parties agree that the discovery of significant new evidence would, under New York law, defeat the application of collateral estoppel. See Khandhar v. Elfenbein, 943 F.2d 244, 249 (2d Cir.1991). Giakoumelos argues that summary judgment was inappropriate in this case because there was a genuine issue of fact regarding whether the statements made in the Braun affidavit constituted significant new evidence. In support of this argument, Giakoumelos points to the Magistrate's September 1994 and March 1995 summary judgment decisions, each reaching a different result based on the submission of apparently conflicting factual allegations. Giakoumelos characterizes this as an inappropriate determination of a factual issue on a motion for summary judgment. He further argues that, to the extent the ultimate summary judgment decision was based on defendants' in camera submission, it was impossible for him to respond to information to which he had no access.
 
 
 31
 Summary judgment is appropriate when, resolving all ambiguities and drawing all inferences in favor of the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Burgos, 14 F.3d at 789. The court's function on a summary judgment motion is to determine if any material factual issue is in dispute and not to resolve any such issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986). Reviewing the record that the Magistrate had before him, including the Urban transcript, summary judgment was appropriate in this case. The full record does not disclose any evidentiary material that would cause a rational trier of fact to conclude that Braun was a co-conspirator, despite Giakoumelos's unsupported assertions to the contrary.
 
 
 32
 We do not suggest that the basic issue raised by Giakoumelos--the tension between due process and prison security--is insubstantial. At each stage of this case--the disciplinary proceedings, the Article 78 Proceeding, the proceedings before the Magistrate--Giakoumelos's defenses and claims have been defeated by evidence to which he has had no access. However, because we have determined that reliance on such evidence in consideration of the merits of his claims in the disciplinary proceedings and in the Article 78 Proceeding does not deprive Giakoumelos of due process of law, we cannot say that such reliance by the district court was improper for the purposes of summary judgment.
 
 
 33
 Judgment affirmed. We compliment counsel on both sides for their excellent arguments before us in this case.
 
 
 
 [1]
 CPLR § 7803 provides that in an Article 78 proceeding a question may be raised as to "whether a determination made as a result of a hearing held, and at which evidence was taken, ... is, on the entire record, supported by substantial evidence." "Evidence which is sufficient to require the court to submit a question of fact to a jury is sufficient to support a finding by [an] administrative board." Stork Restaurant, Inc. v. Boland, 282 N.Y. 256, 274, 26 N.E.2d 247 (1940). See also 300 Gramatan Ave. Assoc. v. State Div. of Hum. Rts., 45 N.Y.2d 176, 181-82, 408 N.Y.S.2d 54, 379 N.E.2d 1183 (1978)
 
 
 [2]
 The procedural rules for Article 78 proceedings apparently do allow for some limited supplementation of the administrative record on procedural issues, see CPLR §§ 7804(d) and (e), and a trial "[i]f a triable issue of fact is raised" in the proceeding, see CPLR § 7804(h)